JUDD ET AL. *v.* GRAY, GUARDIAN OF GRAY, A PERSON OF UNSOUND MIND.

[No. 18,576.    Filed March 7, 1901.]

PRACTICE.—*Cross-Complaint.—Summons.*—When a cross-complaint is filed no summons in respect thereto is necessary in order to give the court jurisdiction over the person of the plaintiff as cross-defendant and require him to answer.  *pp. 283, 284.*

SAME.—*Dismissal of Complaint Does Not Carry Cross-Complaint.*— The dismissal of a complaint by the plaintiff, and a withdrawal

Judd v. Gray, Gdn.

of his appearance therein, will not operate, without the consent of the defendant, to carry with it a cross-complaint filed by the latter. *p. 284.*

JUDGMENT.—*Vacation.*—*Insane Person.*—Under §396 R. S. 1881, providing that a court "shall relieve a party from a judgment taken against him through his mistake, inadvertence, surprise, or excusable neglect, and supply an omission in any proceeding on complaint or motion filed within two years," a judgment rendered against one who was insane at the time, though not adjudged so, will be set aside. *pp. 284-286.*

APPEAL.—*Record.*—*Instructions.*—The court instructed the jury in writing. At the same term of court at which the verdict of the jury was returned appellant filed motion for new trial. On the first judicial day of the following term of court this motion was overruled, and the bill of exceptions containing the instructions given and refused was filed, showing that the proper exceptions were reserved. *Held*, that the instructions were properly in the record. *pp. 286, 287.*

SAME.—*Record.*—*Evidence.*—Where the record discloses that on the same day on which a motion for a new trial was denied a bill of exceptions embracing the evidence was filed in open court, and the clerk was ordered to file it as a part of the record, and immediately after this entry followed the bill of exceptions, the evidence was properly in the record, although it was not shown that time was given in which to file the bill of exceptions. *p. 287.*

INSANE PERSONS.—*Transactions With.*—*Notice.*—One dealing with an insane person, but who had not been adjudged so, will not, as a matter of law, be chargeable with knowledge of the mental infirmity of such person. *pp. 288, 289.*

From the Pulaski Circuit Court.   *Reversed.*

*H. A. Steis, M. M. Hathaway, M. Winfield, C. B. Stuart, W. V. Stuart, E. P. Hammond* and *E. P. Hammond, Jr.,* for appellants.

*S. T. McConnell, A. G. Jenkines, J. C. Nelson,* and *Q. A. Myers,* for appellee.

JORDAN, J.—Preliminary to a consideration of the questions involved in this cause, the following may be said to be the history of the litigation leading up to the appeal: The facts disclose that in 1893, and for some years prior thereto, Thomas Gray, the husband of Jennie A. Gray, who appears as the guardian of the former in this cause, was the owner

in fee of 560 acres of valuable land situated in Pulaski county, Indiana. On July 18, 1893, he, together with his said wife, in pursuance of a previous contract with one Charles Y. Trice, a real estate agent, conveyed said lands to appellant Curtis J. Judd, the latter taking such lands subject to the payment of a mortgage lien thereon of $5,200. As a part of the dealings, and as a part of the consideration of said conveyance to Judd, Trice procured a conveyance to be made by certain parties to said Thomas Gray of lands situated in the state of Kansas. In the spring of 1894 Gray and his wife removed from Pulaski county, Indiana, to Kansas, and located on a portion of the land which had been obtained by Gray by virtue of his dealings with Trice. In December of the latter year while Thomas Gray was still residing in Kansas, and prior to his being adjudged a person of unsound mind, he, through certain attorneys, commenced an action in the circuit court of Pulaski county, Indiana, against Judd, Trice, and one Charles L. Romberger, to set aside his conveyance to Judd of the Pulaski county lands. This action, it appears, was based upon the grounds of fraud upon the part of these defendants in securing the conveyance of said land from Gray. After the institution of this action, such proceedings were had therein as resulted in the filing by the defendants Judd and Romberger of a cross-complaint, to quiet their title against the plaintiff to the lands involved in the suit. An answer in denial to the cross-complaint was filed by the attorneys representing the plaintiff. Subsequently, on April 16, 1895, Gray's attorneys dismissed and withdrew his complaint, and also withdrew his appearance to the cross-complaint of the defendants Judd and Romberger, and thereupon Gray was defaulted, and upon such default judgment was rendered against him quieting the title of the cross-complainants to the lands in dispute. The matter appears to have rested in this condition until about January 1, 1896, when Gray and his wife returned from Kansas to this State

and became residents of Pulaski county. On the 28th day of the latter month, by proceedings had in the Pulaski Circuit Court, Thomas Gray was adjudged to be a person of unsound mind and incapable of managing his estate, and his wife, Jennie A., appellee herein, was appointed his guardian. On February 17, 1896, under the provision of §399 Burns 1894, §396 R. S. 1881 and Horner 1897, appellee as such guardian filed her verified petition in the Pulaski Circuit Court to set aside the default of her ward and have him relieved of the judgment rendered by that court quieting the title of Judd and Romberger to the Pulaski county land. This section among other things provides that the court "shall relieve a party from a judgment taken against him, through his mistake, inadvertence, surprise, or excusable neglect, and supply an omission in any proceedings on complaint or motion filed within two years." The petition, under the facts therein alleged, proceeds upon the theory that the ward, Thomas Gray, was insane at the time he conveyed the lands in question, and that he was of unsound mind at the time the judgment in controversy was rendered against him, and therefore for this reason it was sought to have the court adjudge that his default or failure to defend the action instituted by Judd and Romberger by their cross-complaint was excusable. The petition also alleged facts disclosing that the ward had a meritorious defense to said action to quiet title, which defense was to the effect that the conveyance by him of the lands in controversy was obtained by means of fraud and without any consideration at the time when he was of unsound mind, etc. The prayer thereof was that the default and judgment be set aside and that the petitioner be permitted as guardian to appear in behalf of the ward and defend the action instituted by the cross-complaint. Such proceedings were had on said petition as resulted in the judgment in dispute being set aside or vacated, and in permitting appellee to appear and defend said action. After the judgment was vacated

the cause was finally docketed, whereby Judd and Romberger, the original cross-complainants, became plaintiffs, and appellee became a defendant, and was granted permission by the court to file a cross-complaint against said plaintiffs and others, which was accordingly filed, and she also filed her answer in general denial to the complaint of Judd and Romberger, to quiet their title. By the second paragraph of the guardian's cross-complaint she sought to set aside the deed of conveyance of July 18, 1893, of the Pulaski county lands by her ward to appellant Judd, on the ground of his insanity at the time of said conveyance. Under the third paragraph of her cross-complaint she sought to quiet title to the same lands. Issues were joined between the parties upon their respective pleadings, and the case upon trial was submitted to a jury which returned a general verdict in favor of appellee, and also returned answers to numerous interrogatories propounded. Judgment was rendered on the general verdict in favor of appellee, setting aside the conveyance in controversy and quieting title to the lands involved. Judd, Romberger, and others, who were adverse parties to appellee, severally filed motions for a new trial and motions to modify the judgment, all of which were overruled and exceptions reserved. Appellants have filed assignments in this court whereby the questions involved are properly presented.

Thomas Gray as shown at the time of the rendition of the judgment had not been judicially declared to be a person of unsound mind. It is therefore insisted by counsel for appellants that although he was insane at the time of the rendition of the judgment quieting title upon the cross-complaint of Judd and Romberger, still that does not furnish grounds for nor justify the court in setting aside such default, and in relieving him, through the application of his guardian, from the force and effect of such judgment. Counsel further contend that the fact that Gray may have been of unsound mind at the time the judgment was taken,

still that in no manner defeated the jurisdiction of the court and the judgment rendered must be held valid in all respects, and that §399, *supra,* does not afford a remedy for relief against such judgment upon the ground of Gray's insanity. Counsel for appellee upon the other hand contend that his insanity when the judgment was taken must be held and considered as a sufficient excuse under the statute for his default or failure to make a defense to the cross-complaint of Judd and others. They further insist that as the judgment in controversy was rendered upon said cross-complaint without any notice or process being served upon Gray after the dismissal of his action and the withdrawal of his appearance therein, that, therefore, the judgment is void.

The original action by which the conveyance to Judd of the Pulaski county lands was assailed, was instituted by attorneys acting for Gray, the plaintiff therein, while he was a resident of Kansas. These attorneys claimed to have authority from him to institute and conduct this action in his behalf. He was not personally in court, but remained at his home in Kansas and acted through the agency of his attorneys. It cannot be assumed that the Pulaski Circuit Court would have rendered the judgment in controversy had proof been offered or had it been informed that Gray at the time was a person of unsound mind without a guardian. Upon the contrary, we may presume that the court would, under the provisions of the code, §317 Burns 1894, have appointed a guardian *ad litem* to defend the action or have suspended further proceedings therein until the necessary steps could have been taken to have his insanity judicially ascertained. The court in the absence of any proof to the contrary was bound to assume that Gray, in whose name the action to set aside the conveyance was prosecuted, was a person of sound mind. For as a general rule every person of mature age is presumed to be *compos mentis,* insanity being an exception which must be proved by him who as-

serts it.   Gray, as we have seen, was the plaintiff, and Judd
and Romberger were defendants in the action mentioned to
set aside the conveyance, hence, under the circumstances, no
summons or notice to him in respect to the cross-complaint
was necessary in order to give the court jurisdiction over his
person and require him to answer said complaint, and upon
his default or failure to do so, the court was authorized to
render judgment against him.   For the rule is well settled
that the dismissal of a complaint in an action by the plain-
tiff and a withdrawal of his appearance therein will not
operate, without the consent of the defendant to carry with
it a counterclaim or cross-complaint filed by the latter.   It
is expressly provided by §356 Burns 1894 that the defend-
ant shall have the right of proceeding without notice to the
trial of his claim, although the plaintiff may have dismissed
his action or failed to appear therein.   *Egolf* v. *Bryant,* 63
Ind. 365; *Reid* v. *State,* 74 Ind. 252; *Tabor* v. *Mackkee,* 58
Ind. 290; *Watts* v. *Sweeney,* 127 Ind. 116, 22 Am. St. 615;
*Chandler* v. *Citizens Nat. Bank,* 149 Ind. 601.

A person of unsound mind, before his insanity has been
judicially determined, may be sued in like manner as other
persons.   The court, however, when such insanity is dis-
closed or shown, as we have previously said, should appoint
a guardian *ad litem* to defend him in the action or suspend
further proceedings therein until a guardian, under the law,
can be appointed.   Where the court has jurisdiction, how-
ever, of the person of the insane defendant and the subject-
matter of the action and renders judgment against him,
such judgment is not void, and therefore is not open to a
collateral attack, but is binding until set aside or vacated in
a direct proceeding for that purpose.   *Epstein* v. *Greer,* 93
Ind. 140; *Woods* v. *Brown,* 93 Ind. 164, 47 Am. Rep. 369;
*Boyer* v. *Berryman,* 123 Ind. 451; Van Fleet's Col. Att.
§616; Freeman on Judg. §152; Black on Judg. §205.

When Gray's counsel in the action instituted dismissed
the same, and also withdrew his appearance, this, in effect,

operated to withdraw all of the pleadings before the court filed therein in his behalf, but such dismissal and withdrawal, as we have previously shown, did not serve, over the objections of the defendants who were cross-complainants, to prevent them from proceeding with their cross-action to a final determination, without further notice. Gray, so far as he was concerned in regard to the issues tendered by the cross-complaint, was subject to the jurisdiction of the court without any other notice than that afforded by the filing of the cross-complaint against him previous to said dismissal and withdrawal. The cross-complainants, under the circumstances, by their cross-action virtually became the plaintiffs and actors in the suit, and Gray, the former plaintiff, occupied the position of a defendant who had been duly notified of the pendency of such cross-action. *Chandler* v. *Citizens Nat. Bank,* 149 Ind. 601, and cases there cited. Consequently, the judgment from which appellee sought to be relieved must be viewed and considered in like manner as though it had been taken upon the default of Gray in an action wherein he had been duly served with process. The verified petition of the appellee to set aside the judgment in controversy discloses a meritorious cause of defense. Hence, the disputable question thereunder related to that of excusable neglect. *Dobbins* v. *McNamara,* 113 Ind. 54, 3 Am. St. 626, and cases there cited.

Evidence was introduced upon the hearing of the petition, which tended, at least, to establish that Gray at the time the judgment was rendered was a person of unsound mind and not then under guardianship. We are of the opinion that his default or failure, under the circumstances, to answer and make a defense to the action instituted under the cross-complaint, must be held to be excusable within the meaning of §399, *supra,* and therefore his guardian in this case was entitled, under that statute, to secure the relief therein provided, and the court did not err in awarding it to her.

We cannot yield to the contentions of counsel for appellants and give the statute the narrow and harsh construction for which they contend.   A judgment rendered against one *non compos mentis* under such circumstances, if permitted to stand, while not void, would at least be inequitable and would operate unjustly upon the insane defendant who was incompetent at the time to make the necessary defense.   The conclusion which we have reached upon this question is fully sustained by the decisions of this court in *McClain* v. *Davis,* 77 Ind. 419, and *Dickerson* v. *Davis,* 111 Ind. 433. In the latter case this court said: "The fact that the maker of the note was of unsound mind at the time judgment was taken against him by default, presented such an excuse for his non-appearance as entitled his guardian to have the default set aside under the provisions of §396 [R. S. 1881]. *  *, *  Where an inequitable and unjust judgment has been taken against a party by default, it is the duty of the court to relieve him from the judgment, upon complaint or motion filed within two years, provided it be shown that he has a meritorious defense which, without inexcusable neglect on his part, he was prevented from making."   We are further supported in our views by the cases of *Gerster* v. *Hilbert,* 38 Wis. 609, and *Bond* v. *Neuschwander,* 86 Wis. 391, 57 N. W. 54.

Numerous questions are argued by counsel for appellants which depend upon instructions given and refused and also upon the evidence.   Counsel for appellee contend that neither the evidence nor the instructions are in the record, because the bills of exceptions embracing the same were not filed at the proper time.   Their contention in respect to the instructions seems to be that they were not embraced in a bill of exceptions at the time the motion for a new trial was filed.   The record, however, discloses that the court instructed the jury in writing.   At the same term of court at which the verdict of the jury was returned, appellants filed their several motions for a new trial.   On the first

judicial day of the following term of court, before these motions were overruled, the bill of exceptions containing the instructions given and refused was filed.  This bill shows that proper exceptions were reserved to the giving of the instructions and to those refused.  In respect to the evidence it is insisted that the bill of exceptions containing it is not in the record because it was filed prior to the filing of the motions for a new trial.  The record shows that these motions were overruled and exceptions reserved thereto on February 21, 1898, during the regular term of the Pulaski Circuit Court.  It is true that the record does not show that time was then given to file bills of exceptions, but it does disclose that in the same proceedings and on the same day that the motions for a new trial were denied the bill of exceptions embracing the evidence was filed in open court and the clerk was ordered to file it as a part of the record, and immediately after this entry follows the bill of exceptions containing the evidence.  We are of the opinion that under these facts both the instructions and evidence are properly in the record.  In fact, the questions presented and argued by counsel for appellee, in respect to the several bills of exceptions, not being a part of the record, are fully considered and settled adversely to their contentions in *Minnick* v. *State*, 154 Ind. 379.  See, also, *Jones* v. *Casler*, 139 Ind. 382, 47 Am. St. 274, and *Banner Cigar Co.* v. *Kamm*, 145 Ind. 266.

The court gave to the jurors a series of some fifteen instructions whereby it sought to advise them in regard to the law relating to the avoidance of deeds and contracts of persons of unsound mind, executed before their insanity had been judicially declared.  An examination of the evidence and the charge of the court discloses that the case was tried below and submitted to the jury upon the disputed question as to whether Thomas Gray was of unsound mind at the time he conveyed to appellant Judd the lands in issue. Numerous witnesses introduced upon the part of appellee

testified to the insanity of her ward at and subsequent to the execution by him of the deed in question, while in behalf of appellants a large number of witnesses testified to the effect that Thomas Gray was of sound mind during the same period of time. There was evidence on the part of appellants tending, at least, to show that Gray was apparently of sound mind and that he had been fairly and honestly dealt with in the transaction and had received a valuable and adequate consideration for the lands conveyed. That neither Judd nor his associates connected with the transaction had any notice or knowledge of said grantor's insanity at the time of the conveyance of the lands in controversy. Consequently it is claimed by appellants that the knowledge of Gray's insanity upon their part was a material issue in the case to determine as to whether Judd was entitled to be placed in *statu quo* before there could be an avoidance of the deed of conveyance by reason of Gray's insanity. See *Thrash* v. *Starbuck,* 145 Ind. 673.

In regard to such notice in respect to the insanity of Gray at the time of their dealings with him, the court upon the request of appellee, gave to the jury the following charge number seven in the series of instructions: "(7) The law is, gentlemen of the jury, that persons dealing with a man of unsound mind are *presumed* to know his unsoundness of mind, even if in fact they do not know of his mental unsoundness. For the protection of such unfortunates, the law charges every person dealing with a person of unsound mind with notice of his insanity, and hence it is not necessary for the defendant to prove that the plaintiffs had such notice of Thomas Gray's unsoundness of mind at or before the time they dealt with him, if you find that he was in fact of unsound mind at that time, for the law *conclusively presumes* that they had such notice, and knew at the time that he was of unsound mind, even if in fact neither of them did know it. And therefore, if you find that when the plaintiffs dealt with Thomas Gray he was a person of unsound

mind and incapable of managing his estate, *you must also presume in making your verdict that the plaintiffs knew and had notice of his insanity."*  (Our italics.)   This instruction is manifestly erroneous.   By it the jury in effect was informed that in the event they found that Gray was a person of unsound mind they must presume or infer as a matter of law that appellants had notice of that fact.   It is certainly not the law that one dealing with a person of unsound mind, not under guardianship, is conclusively presumed to have knowledge of his mental infirmity and is chargeable therewith, although in fact he had no such notice.   The question of knowledge, under the circumstances of this case, was an issuable fact for the determination of the jury, and the court in giving the instruction evidently invaded their province.   *Abbitt* v. *Lake Erie, etc., R. Co.,* 150 Ind. 498; *Latshaw* v. *State, ex rel., ante,* 194; *Fulwider* v. *Ingels,* 87 Ind. 414.

Many other questions are presented by appellants' learned counsel, in the argument of which they criticize and condemn as erroneous other rulings of the trial court in respect to the giving and refusing of instructions, and also in denying the motion of appellants to modify the judgment whereby the mortgage lien, heretofore mentioned, placed upon the lands in dispute by Gray and wife, and paid and discharged by appellants, was sought to be preserved in favor of the latter.   Possibly some of these criticisms and objections may be well founded, but as to this we do not decide.   As the judgment must be reversed on account of the error of the court in giving the seventh instruction heretofore set out, it is not essential that we further extend this opinion in the consideration and decision of these questions, as they may not again arise upon another trial.   This court has uniformly acted upon the rule that where the judgment below must necessarily be reversed, it will not consider and decide all of the questions urged and presented, unless it is

evident that they will arise again upon a new trial, and then such questions are only decided for the reason that the court deems it a matter of expediency to do so, and not because it is a matter of duty.

For the error in giving the instruction mentioned, the judgment rendered upon the verdict of the jury is in all things reversed, and the cause is remanded to the lower court, with instructions to sustain the motion of appellants for a new trial.