**CORNWELL v. CORNWELL et al.**

No. 7389.

United States Court of Appeals for the
District of Columbia.

Decided Feb. 17, 1941.

Aubrey B. Fennell and L. Q. C. Lamar, both of Washington, D. C., for appellant.

David A. Pine, Lucien H. Mercier, and James B. Costello, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER, and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

The suit in the lower court was instituted by appellant to compel the United States to pay to her the proceeds of a policy of war risk insurance on her husband's life. The United States admitted liability under the policy. It remained to be determined whether appellant or appellee Cornwell was the beneficiary thereunder. The questions presented by this appeal, however, do not go to the merits, but are exclusively procedural in nature, namely, whether the trial judge abused his discretion, first, in overruling appellant's motion to postpone the trial; second, in denying appellant's motions for new trial and to vacate the judgment. We are satisfied that the second question must be answered in the affirmative; hence, that it is unnecessary to consider the first one, except as it may relate to the second.

The cause was originally set for trial in the District Court on June 6, 1938. ·On the preceding 23d of May, appellant's attorney sought and obtained a continuance until June 20, 1938. One of the reasons urged in support of that continuance was the illness of appellant. Definite assurance was given by counsel, however, that the case would go to trial on the day set. Thereafter, from June 4th to June 8th, 1938, inclusive, appellant was present in person, on the taking of depositions in Plainfield, New Jersey, and in New York. Although the weather was very hot, appellant insisted, over objection of counsel, upon be-

ing present at their taking. At that time she appeared to counsel for appellee Cornwell to be in good health, in excellent physical condition, and neither mentally nor physically fatigued.

On June 16, 1938, appellant's counsel moved for another continuance, based upon the following letter from a physician:

"I was called in to see Mrs. Elizabeth J. Cornwell on June 9th, 1938, and after obtaining history and after examination in my judgment she will be unable to be present at the hearing, in Washington, on June 20th, 1938."

On June 19, 1938, appellant called the trial judge on the telephone, and when the case went to trial on June 21st, the latter made the following notation for the record concerning that conversation:

"The Court. Perhaps I should say this for the sake of the record, that she [tele] phoned me at my house Sunday afternoon and did not stress her condition as the cause of not being here; said the case was not prepared for trial, and I understood her to say that it could not be properly prepared inside of a year and a half, something of that kind."

During the first day of the trial the judge made the following further notation for the record:

"The Court. I thought I should put this in the record: Around 9:30 this morning I had a long distance telephone call from the plaintiff, Mrs. Cornwell. It was reported to have been from Plainfield, New Jersey. She said that she had a letter this morning from Mr. Miller, saying that her case would be resumed at 1:30 o'clock today, this afternoon, and that she did not have time to come. I told her that she had had plenty of notice, and should have been here, if she wished to testify. I told her that the case was nearing its completion, and that if she wished to start down here I would hold the case open until she should arrive and have a chance to testify. She said nothing about sickness nor about physical inability to come. She tried to tell me her views of the case, which I halted as soon as possible. She did say, however, that Dr. Cornwell had been murdered, and that Mr. Miller knew this. I told her if she wished to testify she should be on her way, and to notify Mr. Miller that she was on the way, and I would give her a chance to be here and be heard."

Appellant was not present during the trial.

On June 24th, the jury gave its verdict in favor of appellee Cornwell; judgment was entered on July 1st. From July 4th to July 9th, appellant was in Washington, during which time she was exceedingly active in investigating her case; she spent several hours with an assistant United States attorney, and had lengthy conferences with her attorney, with officials of the Department of Justice, and with deputies in the office of the clerk of the court.

Under date of July 13th, Ray T. Munger, M. D., sent the following letter to the trial judge:

"On June 9th, 1938, I was called to see Mrs. Elizabeth J. Cornwell of Plainfield, New Jersey, the widow of Dr. F. C. Cornwell, who was one of Plainfield physicians for many years. From the history obtained she had been confined to her room for the past month. She was able to take a small amount of nourishment and required the services of helper thru most of this period. After examination I concluded she was suffering from *a very definite nervous condition,* associated with general weakness and lack of muscle tone. As a result of examination I felt she was unable to be present at the hearing in Washington, D. C., on June 20th, 1938." [Italics supplied]

The motions to vacate the judgment and for new trial were supported, also, by a number of affidavits; two of which are referred to hereafter. The others were made by appellant, by her acquaintances, and by the proprietor and various employees of the Park Hotel in Plainfield, New Jersey, at which hotel appellant then resided. These latter affidavits set forth, in substance, that appellant had been ill and confined to her bed for a long time; that she left her sickbed at the time of taking depositions in June; returned to it immediately; rose again when she made her trip to Washington and returned to her sickbed immediately thereafter. All affidavits agreed that she was not in condition to be present for the trial. Appellant's counsel had represented to the court that his client had been unable to be present at the trial; that she was not only the party plaintiff but the most important witness; and that the case could not be fairly and properly tried in her absence.

▆▆ Appellee Cornwell contends that the efforts of appellant's counsel to secure,

first, a continuance and, later, a new trial, were not made in good faith. But there is nothing in the record to support such a contention or to suggest that injury might have resulted to appellee Cornwell from a continuance.[1] On the other hand, there is the significant statement in Dr. Munger's letter to the effect that appellant was suffering from "a very definite nervous condition." And in the affidavits of the psychiatrists, Dr. Thibadeau and Dr. Foxwell, the court was advised, as of the 20th of July, 1938, upon the basis of examinations made on July 9, 1938, that:

"* * * Today, the patient shows marked mental depression and is agitated. She has difficulty in concentrating because of marked tension. Her pulse is rapid, 116. There is tremor of fingers. Her hands are cold and moist. Several times during the examination she gave way to tears, though making much effort not to cry.

"From the subjective complaints and the objective findings, we are of the opinion that this patient has a psychoneurosis of severe degree and that it has been present for at least several months. The emotional stress to which she was subjected in attending the taking of the depositions caused her to become completely incapacitated mentally and physically. We believe that it would have been impossible for her to have come to Washington to attend court on or about June 20th, 1938, or June 21st, 1938, and her condition today demands that she remain at complete rest."

Considered in this light, the feverish activity of appellant during periods before and after the trial, preceded and followed in each instance by periods of physical and mental depression, far from suggesting her ability to be present and recalcitrant refusal to do so, suggest, instead, the recurrence of periods of incapacity. The statements made over the telephone to the trial judge are similarly suggestive. One who is in such a mental condition may be entirely unaware of his incapacity.[2] It is commonly known that insane persons are usually the last to admit the fact of insanity. On argument, the undisputed statement was made that appellant had later been confined in an insane hospital. Of course, this was not part of the record upon which the court acted. In fact, in justice to the trial judge, it should be said that much which now clearly appears, was not apparent when the motion for a continuance was made; but enough appeared on the motion for a new trial to require that it be granted.[3]

Moreover, there is nothing in the record to suggest that appellant—in spite of recurrent periods of incapacity—was not at other times capable of giving rational and competent testimony; or that if a new trial were granted, to be held on a date fixed with the advice of competent medical counsel, she would be unable so to testify. This brings the case within the pertinent rule of evidence.[4]

Although the granting of a continuance or of motions for vacation of judgment and for new trial are addressed to the discretion of the trial court,[5] that discretion must be exercised in the interest of justice.[6] Where, as here, the appellant

---

[1] Harrah v. Morgenthau, 67 App.D.C. 119, 89 F.2d 863.

[2] George W. Henry, Essentials of Psychiatry (1931) 204: "Among the greatest obstacles to preventive treatment are the misconceptions on the part of the general public in regard to mental disorders. Most people regard themselves as mentally 'normal.' They resent or become alarmed at any suggestion that they have characteristics in common with the mentally abnormal."

[3] Cf. Southern Nat. Life Ins. Co. v. Ford's Adm'r, 151 Ky. 476, 482, 152 S. W. 243, 245; Lutter v. Neubauer, 100 N.J.L. 17, 21, 125 A. 113, 114, affirmed, 101 N.J.L. 222, 127 A. 924; Judd v. Gray, 156 Ind. 278, 286, 59 N.E. 849, 851; Brothers v. Brothers, 71 Mont. 378, 384, 230 P. 60, 61; Note, 34 A.L.R. 225.

[4] Cf. 2 Wigmore, Evidence (3d ed. 1940) §§ 492–495; District of Columbia v. Armes, 107 U.S. 519, 521, 2 S.Ct. 840, 27 L.Ed. 618. Cf. also, Ross v. United States, 7 Cir., 93 F.2d 950, 951; Miller v. Pennsylvania R. R., 303 Pa. 524, 527, 154 A. 924, 925; Brown v. Armstrong & Latta Co., 239 Pa. 549, 554, 555, 87 A. 11, 13.

[5] Hallowell v. Darling, 32 App.D.C. 405; Kenyon v. Youngman, 59 App.D.C. 300, 40 F.2d 812.

[6] See Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520: "The term 'discretion' denotes the absence of a hard and fast rule. * * * When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the

was ill and was the most material witness in support of her own case, we conclude that the motions should have been granted.[7] Reversed.

circumstances and the law, and directed by the reason and conscience of the judge to a just result." Cf. Watt v. Stanfield, 36 Idaho 366, 372, 210 P. 998, 1000; Davis v. Boston Elevated Ry., 235 Mass. 482, 496, 497, 126 N.E. 841, 843, 844; Butler & Co. v. Strickland-Tillman Hardware Co., 15 Ga.App. 193, 194, 82 S.E. 815, 816.

[7] Harrah v. Morgenthau, 67 App.D.C. 119, 89 F.2d 863, and cases there cited; Wilcox v. Bowen, 26 Ga.App. 306, 106 S.E. 18 (party ill, continuance refused, party material witness); Bergh v. Hellickson, 44 N.D. 9, 177 N.W. 506 (party mentally depressed, continuance refused, party material witness); Vallandingham v. Cook, 212 Ky. 614, 279 S.W. 1078 (party ill, continuance refused, party material witness).