AUTOMOBILE UNDERWRITERS, INC. *v.* RICH

[No. 17,377. Filed January 11, 1946. Rehearing Denied March 5, 1946. Transfer Denied March 22, 1946.]

512

*Fenton, Steers, Beasley & Klee,* of Indianapolis, and *Parr, Parr & Parr, of Lebanon,* for appellant.

*Seth Ward* and *Edwin McClure,* both of Indianapolis, and *Scifres & Hollingsworth,* and *John Hornaday,* all of Lebanon, for appellee.

DRAPER, J.—The appellee sustained an injury to her left knee, alleged to have been caused by the negligent operation of a truck by appellant's assured. Thereafter the appellant obtained a release and covenant not to sue. This action was brought by the appellee against the appellant to recover damages alleged to have been sustained by appellee because of the fraud of appellant's agent in obtaining the release and covenant.

A judgment in favor of appellee upon a former trial was reversed by the Supreme Court (222 Ind. 384, 53 N. E. (2d) 775), and the cause was remanded and retried. The appellee again recovered on the same complaint and this appeal followed.

In the opinion above referred to, the allegations of the complaint were summarized by the Supreme Court and those on the issue of fraud were separated, numbered and set out as follows: " . . . Harvey, the agent

of appellant, made the following statements to the appellee, upon which she relied and which induced her to sign the release and covenant not to sue: 1. That he was an attorney and acquainted with her rights; 2. that she needed no attorney to inform her of her rights; 3. that one hundred fifty dollars ($150.00) was the greatest amount she could hope to recover; 4. that unless she took this sum and made settlement she would receive nothing; 5. that he had investigated her injuries and that they were not permanent but merely temporary and that she could go to work in a few days; 6. that if she filed suit it would of necessity be in Bartholomew County and that a farmer jury of that county would give her nothing; 7. that even if she did recover she would need attorneys and that the attorneys would take all that would be awarded her."

The appellant first relies for reversal upon the proposition that the verdict is not sustained by sufficient evidence. The Supreme Court held the evidence upon the former trial to be insufficient to sustain the verdict, and we must, therefore, consider the extent to which that court's decision has become the law of the case.

The decision of the Supreme Court as to the sufficiency of the evidence to sustain the verdict is the law of the case upon the facts then before it. If the appellee's evidence, or the evidence favorable to the appellee as shown by the record before us, is the same or substantially the same as on the first trial, we are required to hold, as did the Supreme Court, that it is not sufficient to sustain the verdict. Additional evidence, merely cumulative, is not enough. It must be substantially different and warrant a different conclusion. *Westfall* v. *Wait* (1905), 165 Ind. 353, 73 N. E. 1089; *Riesbeck Drug Co.* v. *Wray, Admx.* (1941), 111 Ind. App. 467, 39 N. E. (2d) 776.

To ascertain what facts were before the Supreme Court on the former appeal, and to what extent the decision there made is the law of the case, we ■ may look to the record in that case. *Westfall* v. *Wait, supra.*

The Supreme Court held that all of the allegations of the complaint on the issue of fraud except the one referred to as number five, were mere assertions ■ or matter of opinion, as to which there was no evidence of their falsity. No other or different evidence, not cumulative, was offered in support of these allegations, and so we characterize them as did the Supreme Court, and find no evidence that Harvey knew or believed differently than he expressed himself with regard to those matters.

Additional evidence with respect to the allegation numbered five was offered at the second trial. The appellee testified at the first that Harvey told her he had talked with her physician and her physician told him her injuries were temporary and not permanent. At the second she testified he also told her he had studied medicine; he had had a lot of experience with injured knees and it would take a broken bone or something like that to make a stiff leg; and he knew for sure she would be all right.

The appellee's mother, who testified at the first trial that she did not hear Harvey and the appellee discuss appellee's injuries, testified at the second that she did hear them discuss that subject and heard Harvey tell the appellee her leg would be all right; he had studied books on bones; she only needed to stay on her leg and exercise it; her injuries were temporary and her doctor told him her injuries would not be permanent. Both testified that Harvey did not look at appellee's injured knee.

The undisputed evidence shows that the appellee's left knee was bruised and sustained a cut which required no sutures. She was treated by her own physician and about three weeks later returned to work. Harvey called at her home several times but she would make no settlement then because she was uncertain as to the severity and permanency of her injuries. About one week after she returned to work, or about one month after the accident, she executed the release and covenant at her home, at the same time that others involved in the accident made settlements, her father, mother, sister and others being present.

During the interval between accident and settlement, she saw her doctor frequently, both at her home and at his office, and each time they discussed her injuries. On those occasions he advised her concerning the possibility and likelihood of their permanency. About two days after making the settlement she again consulted her physician, and she held the check about ten days before cashing it to see how her injuries would develop. She said she finally decided it was all she could get, so she cashed the check. Some time later her injuries developed in a manner unforeseen, so far as the evidence discloses, by anyone who had anything to do with the transaction.

We can find in the evidence presented by this record nothing that would justify us in reaching a conclusion different from that reached by the Supreme Court. Whether the statements made by Harvery relative to the development of her injuries and his ability to foretell the same were statements of fact, true or untrue, or the expression of opinions which, if false, were contrivances of fraud, seems immaterial, for one of the indispensable elements of a case of this kind is that the party to whom the representations are

made is, in fact, induced to act to his injury in reliance upon them. *Automobile Underwriters* v. *Rich, supra.*

We are of the opinion that the appellee, an intelligent woman 27 years of age, who was frequently examined and treated by her own physician, and who frequently consulted with him and was advised by him relative to the seriousness of her injuries and their possible permanency before she received the check, and once thereafter before she cashed it, had no right to rely upon the prognosis of a lawyer-claim adjuster who had never so much as seen her injured knee. *Hetrick* v. *Yellow Cab Co.* (1932), 167 Wash. 135, 8 P. (2d) 992; 23 Am. Jur., § 144, p. 946. Moreover, the evidence leads inescapably to the conclusion that she did not, in fact, do so.

Other questions which we regard as serious have been raised, but in view of the conclusion reached it will not be necessary to discuss them.

Judgment reversed and cause remanded with instructions to sustain appellant's motion for a new trial.

Royse, P. J., not participating.

NOTE.—Reported in 64 N. E. (2d) 305.