MAHIN ET AL. *v.* SOSHNICK, EXECUTOR, ETC. ET AL.

[No. 18,686. Filed March 21, 1958.]

*Lawrence Booram* and *Grace B. DeArmond,* of Anderson, for appellants.

*Adams & Cramer, Perry W. Cross* and *H. Harold Soshnick,* all of Shelbyville, for appellee, H. Harold Soshnick, executor of the last will and testament of Bertha Mahin.

*Paul E. Beam,* of Indianapolis, for appellee, The Ohio Casualty Insurance Co.

*Emerson J. Brunner,* of Shelbyville, for appellees, Dorothy F. Marshall and Lewis C. Marshall.

BOWEN, J.—Appellants instituted proceedings in the court below seeking to set aside the final settlement of the estate of one Bertha Mahin, deceased, on the grounds that there was illegality and fraud in prior proceedings in the administration of such estate and in connection with such final settlement which adversely affected the rights of the appellants.

In his petition the appellant, Glenn R. Mahin, charged that on December 5, 1952, while he was allegedly insane and incapable of understanding, he signed an agreement in settlement of litigation, by the terms of which he paid the appellee, Dorothy F. Marshall, $6,000.00 for her one-half interest in decedent's real estate, and $9,000.00 for an alleged interest in the personal property of decedent, and that he paid the appellee executor $3,790.25 with which to pay all debts, claims, costs of administration, executor and attorney's fees. That on December 8, 1952, the Shelby Circuit Court entered a judgment approving such settlement contract and adjudging the will of Bertha Mahin, deceased, to be valid and sustained its probate. The petition further alleged that the executor's final account was filed February 12, 1953, and the 19th day of March, 1953, was fixed for hearing on the same, the court entered its order discharging such executor and adjudging such estate fully settled on March 20, 1953. That pursuant to an insanity proceeding appellant, Glenn Mahin, was taken into custody on March 16, 1953, and held in the Shelby County jail when the final account was adjudged settled, and on March 21, 1953, he was adjudged mentally ill by the Shelby Circuit Court and his being at large dangerous, and on March 25, 1953, he was taken to the Madison State Hospital for mental treatment where he remained until on or about June 1, 1953. The charges of illegality and fraud contained in such petition alleged in substance that he was induced to sign a contract in settlement of litigation through alleged false and fraudulent representations made to him by the attorneys for the executor, the executor, and the attorney for the appellee. Further allegations were contained in such petition with reference to alleged fraudulent illegal acts

with reference to the interests of the minor children of said Glenn Mahin.

The prayer of the petition asked that a final settlement of the estate be set aside and that all prior proceedings in the administration of such estate revoked and set aside, and the court order the appellee, Dorothy F. Marshall, to pay into the court the sum of $15,000.00 which be held for further order and direction, and that there be further administration as would be necessary to protect the several rights and interests of each of the appellants.

The executor filed answer to appellants' petition admitting the majority of the recitals in the petition except the recital as to the alleged insanity of said appellant and denied that he was of unsound mind at the time he signed the settlement contract and denied the allegations with reference to the fraudulent representations and inducements at the time of the signing of such settlement agreement, and asked that the petitioner take nothing by his proceeding.

Trial was had by the court and the court adjudged and decreed that neither of the appellants was personally summoned to attend the final settlement and the hearing on said final account but that neither of them was adversely affected by such settlement and the approval of the executor's final account and in the prior proceedings in the administration of said estate; that there was no illegality in the final settlement and the final proceedings in the administration of the estate; that there was no fraud in the final settlement of the said estate; and that there was no mistake therein; that all prior proceedings and ancillary proceedings in the administration of such estate should not be revoked, set aside or vacated, and the final settlement of said decedent's estate, together with the executor's final re-

port and accounting, were approved and reaffirmed in all things by the court.

The appellants filed a motion for a new trial, the grounds of such motion being that the decision of the court is contrary to law. The court overruled the motion for a new trial, and this appeal followed.

Error assigned for reversal is that the court erred in overruling appellants' motion for a new trial.

By reason of the issues raised by appellants' assignment of errors we are called upon to determine whether or not the decision and judgment of the court. was contrary to law in holding and determining that there was no fraud or illegality in the final settlement of the estate and in the prior proceedings in the administration thereof adversely affecting the appellant and his minor children, upon a consideration of the evidence in the record most favorable to the appellees.

From the record it appears that Bertha Mahin died testate and that her will was duly probated and the appellee, H. Harold Soshnick, was appointed executor thereunder and duly qualified. The decedent left surviving her the appellant, Glenn R. Mahin, a son, and the appellee, Dorothy F. Marshall, a daughter, who would have been decedent's heirs had she died intestate. The appellant, Glenn Mahin, was devisee under Item 6 of the will, which granted him an option to purchase certain of decedent's lands, but if such option was not exercised this land was to be sold and the proceeds divided equally between said surviving son and daughter, the said Dorothy F. Marshall to receive one-half from the sale of the land, whether purchased by Glenn Mahin or under court sale. The appellants, John Dale Mahin and Norman Glenn Mahin, minor children of Glenn Mahin and Jessie Dayle Mahin, were legatees under Items 3 and 4 of such will which bequeathed all of the decedent's moneys and proceeds

from the sale of all personal property to them in equal shares to be used for their college education.

Subsequent to the probate of the will the appellee, Dorothy F. Marshall, daughter of the testatrix, filed an action to contest her mother's will through her attorney, Emerson J. Brunner. Trial of that action was commenced on December 1, 1952. Prior to this date, upon petition by the executor, the Shelby Circuit Court authorized the executor to employ the firm of Adams and Cramer to assist him in the defense of the will contest and in the administration of the estate. In this will contest action one Perry W. Cross, a then practicing attorney of the Shelbyville Bar, was appointed guardian *ad litem* for the defendants, minor legatees John Dale Mahin and Norman Glenn Mahin, and prior to the trial of such cause said guardian *ad litem* filed his answer to the complaint. Such answer asked that the court require strict proof by the plaintiff of the material allegations contained in her complaint and in each rhetorical paragraph so that the interests of such minors might be protected. The record further shows that from the time of the filing of the action until trial was commenced in such will contest there were unsuccessful attempts to compromise and settle such litigation through the attorneys, and that in addition the appellant, on several occasions, made overtures toward settlement to his sister, the appellee Dorothy Marshall, and her husband.

It is significant that Jessie Dayle Mahin, on March 16, 1953, filed an application in the Shelby Circuit Court for the commitment of Glenn R. Mahin as an insane person. In such petition Mrs. Mahin stated that she had known Glenn Mahin intimately for ten years and that she had observed no signs of mental illness regarding him before January 1953, which was a full month after the execution of the settlement contract

on December 5, 1952, and after his testimony in the will contest on December 3, 1952. There is no evidence from any witness of a condition of insanity on either of those dates. Further, there is evidence favorable to the appellee that Glenn Mahin was of sound mind before December 5, 1952, and thereafter. Eleven jurors and witnesses who had dealt with him in business transactions and other impartial witnesses testified that he was of sound mind at the time the settlement contract was executed.

The record shows that prior to the *voir dire* examination in the will contest case approximately one and one-half hours were consumed by the attorneys and parties in an attempt to compromise the litigation. The appellant, Glenn R. Mahin, stated that he wanted to settle whereby he could get the real estate, and that he did not want Dorothy Marshall to have any of the land. During the trial, when asked to state his name, Glenn Mahin refused at first and instead referred to the testimony of the previous witnesses, calling them liars. He was further questioned regarding his mother's previous will and when asked what he did with it and where it was, he continued to answer that it was his mother's will and that he did not know what she did with it. Upon admonition of the court he finally admitted that he tore it up in the back yard, after stating to the court that he understood Mr. Brunner's question.

On December 3, 1952, the trial of the will contest was recessed because of the death of a juror's mother, until December 8, 1952. After adjournment attorney Fred Cramer told Glenn Mahin that he had made a poor witness and that in his opinion his conduct had hurt the chances of succeeding in the will contest. Later that afternoon Mr. and Mrs. Mahin appeared voluntarily in the office of such attorney and Mr. Mahin

asked him and executor Soshnick as to his chances, and Cramer reiterated that he had made a very poor witness. He was told that arrangements were being made to take depositions, one for the plaintiff and one for the defendants, the following day, and that he should be present for the taking of such depositions.

On December 4, 1952, his attorneys, Cramer and executor Soshnick, met Glenn Mahin at the entrance to their office building and he went with them to their office and he again asked them what his chances were and he was told that it might end in a "hung jury" and that there was a possibility of losing, mainly because of his conduct on the witness stand. Further discussions were had in which a full explanation was made as to the event of losing the suit as well as the possibility of winning the law suit. Cramer explained to him the meaning of a "hung jury" and that under the circumstances there would have to be another trial. Further discussions were had regarding a compromise of the law suit and upon Glen Mahin's request for an estimate of the total expense he was told that over and above the $15,000.00 it would be from $4,000 to $5,000.00; that this would pay his own attorneys for their services, the executor for his services, and the debts against the estate. Mahin said that maybe he ought to consider the settlement offer but he wanted to talk to his wife about it. Before leaving he instructed his attorneys to try to get the other side down from the $15,000.00 figure. On the same afternoon he returned to his attorneys' office and stated that he had talked to his wife about the proposed settlement and that in his opinion the taking of a deposition should be called off and they should try to settle the case. The taking of depositions was postponed and the attorney for appellee was notified that settlement negotiations would ensue. Later that afternoon Mr. and Mrs. Mahin

conferred with their attorneys, Adams, Cramer and executor Soshnick and Mr. Mahin authorized the attorneys to pay his sister $12,000.00 instead of $15,000.00. This offer was telephoned to appellee's attorney and rejected by him. Later the parties made further offers of settlement to appellee's attorney by telephone. Counter offers were made involving the payment of $10,000.00 to Dorothy Marshall and the keeping of certain land by her. Glenn Mahin stated that he did not want his sister to have any of the land. The appellee's attorney refused to make any further counter offer and Mahin agreed to the $15,000.00 offer, he to pay the debts and expenses of administration including attorneys' fees, one-half interest in the gas well, and Dorothy Marshall's claims to Bertha Mahin's estate.

On the morning of December 5, 1952, Glenn Mahin returned to executor Soshnick's office and after discussions agreed to go ahead with the settlement which he had agreed to the day before. After lunch on such day Mr. and Mrs. Mahin came back to Shelbyville to the office of another attorney to arrange for the consummation of the sale of the farm which he owned in Rush County, and resulted in the Mahins executing a contract to sell the Rush County farm. After the execution of the contract for the sale of the Rush County farm in attorney Barnard's office, Mr. and Mrs. Mahin went to the office of Adams and Cramer and Mr. Mahin read parts of the contract as it was being typed and assembled by the office girls. Upon entering the private office of attorney Adams the Mahins were given copies of the contract to read and examine. On that afternoon about one and one-half hours were spent in discussing the contract with the Mahins. As the various provisions of the contract were being discussed, Glenn R. Mahin stated at one point that he would sign the contract as was. He was told by the executor

Soshnick that he should not sign it until he read it, understood it, and agreed to it, and that he should not sign it unless he understood it. Finally, before the parties signed the contract, Mrs. Mahin stated, "Daddy, I want you to go ahead and sign the contract and settle this matter." The contract was then signed by Glenn R. Mahin, Jessie Dayle Mahin, and Jessie Dayle Mahin, purporting to act as guardian of the two minor children. This contract contained a provision that it should not be in full force and effect until it was signed by all of the parties and approved by the Shelby Circuit Court and the Judge thereof. After the contract was signed, one copy was taken by the attorney for the appellee to his office for his client's signature and then copies were taken by each of the parties.

On December 8, 1952, Jessie Dayle Mahin was appointed guardian of John Dale Mahin and Norman Glenn Mahin, and Jessie Dayle Mahin as such guardian filed a guardian's petition for an order to compromise litigation and execute such settlement contract. The court entered an order on such petition and approved and confirmed the contract of settlement made and executed by the guardian on behalf of the wards, and her acts and proceedings were thereby formally authorized, ratified and confirmed and she was further directed to do any and all acts required to carry out the terms of the contract.

There is no evidence in the record that the court did not hear evidence on this petition or that he was not fully apprised of the minors' rights before granting the order, nor does it appear that the executor or his attorneys had anything to do with the presentation of this petition to the court.

The executor's petition for an order to compromise litigation and execute a settlement contract was filed and an order thereon granted on December 8, 1952. On

the same day the court entered its order sustaining the validity of the will of Bertha Mahin.

From an examination of this whole record we do not find any misstatement of law or fact made by any of the attorneys to this litigation and therefore the trial court's action in holding that there was no illegality or fraud in connection with such proceedings is sustained by the record in this case, and it does not appear that any illegality or fraud was practiced upon the trial court.

One of the major contentions is that the appellant was induced to sign the settlement contract through alleged and fraudulent representations made to him by Fred Cramer and Ralph Adams, attorneys for the executor, H. Harold Soshnick, and the attorney for the appellees. When we consider such contention in the light of the record before us, and the law with reference to such matters, it is clearly apparent that such attorneys were performing their duty to their clients to keep them advised during progress of the trial of the will contest and that all that such attorneys did, as shown by the circumstances in the record in this case, is that they gave their honest opinions as to what might be expected to happen in the event the will contest was carried on to a final conclusion. We do not find from this whole record any dishonesty of purpose, nor do we find anything amounting to a lack of care on the part of an attorney to his client; nor any actions or conduct on the part of such legal counsel which would by any possible inference constitute illegality or fraud under the law of this state. Mere expressions of opinion, honestly and dutifully given, do not constitute actionable fraud. *Automobile Underwriters, Inc.* v. *Rich* (1944), 222 Ind. 384, 53 N. E. 2d 775; *Automobile Underwriters, Inc.* v. *Rich*

(1946), 116 Ind. App. 511, 64 N. E. 2d 305; *Ayres* v. *Blevins* (1901), 28 Ind. App. 101, 62 N. E. 305.

There is substantial uncontradicted evidence in the record that the appellant Mahin was of sound mind at the time of the execution of the settlement contract. Furthermore, the law is well settled that the test of mental capacity to contract is whether the person possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged; and in order to avoid a contract, it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception or understanding of the nature or terms of the contract. *Daugherty* v. *Daugherty* (1945), 115 Ind. App. 253, 57 N. E. 2d 599. The appellant had not been adjudged of unsound mind on February 10, 1953, the date of the conveyance by the executor of the real estate pursuant to the terms of the settlement contract of December 5, 1952, and the exercise of option by Glenn Mahin on January 12, 1953. There was a conflict in the evidence as to his soundness or unsoundness of mind occasioned by his treatment at the Norways Sanitarium from January 26, 1953, to February 5, 1953. At this time the contract had been executed and nothing remained except the formalities in accordance therewith, and it does not necessarily follow that appellant, Glenn R. Mahin, can avoid his contract, for it is not all sickness of mind or insanity which will subject the contract of a person not previously adjudged insane to an avoidance. *Daugherty* v. *Daugherty, supra; Deckard* v. *Kleindorfer* (1940), 108 Ind. App. 485, 29 N. E. 2d 997; *Teegarden et ux.* v. *Lewis, Admr.* (1896), 145 Ind. 98, 40 N. E. 1047, 44 N. E. 9. Furthermore, said Glenn R. Mahin, by his own testimony, admitted he under-

stood the terms of the settlement contract and objected only to the security provisions therein and admitted the settlement negotiations immediately prior to the contract on December 5, 1952; that he personally took part in the "dickering and horse trading," refused to participate in any compromise which would deprive him of any portion of the real estate which he claimed necessary to the operation of his dairy, and on the date of the execution of the settlement contract completed another transaction involving $42,500.00, and in the negotiations regarding such transaction drove bargains and made his point, and later, in agreeing to the security provisions of the settlement contract, after desiring assurance that he would not be caught in a squeeze financially, demanded time for performance, and between December 1952 and January 26, 1953, was personally able to persuade appellees' attorneys and appellee executor to substantially reduce their fees.

From all of the record in this case it would seem apparent that Glenn R. Mahin had sufficient mind and intellect to understand in a reasonable manner the nature and effect of the acts in which he was engaged; that he fully understood the nature and terms of the contract before it was written, when it was signed, and when it was finally performed.

It was the duty and province of the trial court to weigh the evidence on this issue, and from an examination of the record we find that there is ample evidence to sustain the decision of the trial court that he was of sound mind at the time of the conclusion of the contract negotiations and the performance thereof.

The appellant predicates further error regarding the fact that at the time of the approval of the executor's final accounting on the 20th day of March, 1953, he was confined in the jail of Shelby County, Indiana, and that neither he nor the

minor children, or the guardian of the latter, were personally summoned upon the hearing of the executor's final report. The proceeding in the instant case was brought under the provisions of §6-1424, Burns' 1933, which was then in force, and which reads as follows:

"SETTING ASIDE SETTLEMENT—When final settlement of an estate shall have been made, and the executor or administrator discharged, any person interested in the estate, not appearing at the final settlement, nor personally summoned to attend the same, may have such settlement, or so much thereof as affects him adversely, set aside, and the estate reopened, by filing in the court in which the settlement was made, within three (3) years from the date of such settlement, his petition, particularly setting forth the illegality, fraud or mistake in such settlement, or in the prior proceedings in the administration of the estate, affecting him adversely. . . . ."

It was admitted by the appellee, and established by the judgment from which this appeal is taken, that none of the appellants were personally summoned to attend such hearing. Under the law of this state in existence at the time of the filing of this report, the only notice required on the hearing of the executor's final report was the notice by publication in the newspaper, which was given as shown by the record in this cause. Under the law in affect at the time of this hearing on the executor's final report neither personal notice nor summons to heirs, creditors, and legatees, was required. §§6-1405 and 6-1406, Burns' 1933. While they were not entitled to be personally summoned, any of the appellants were entitled to bring the proceeding to set aside the final settlement within three years from the date of such settlement by filing a petition asking that such estate be reopened, and particularly setting forth the illegality, fraud, or mistake in such settlement or in the prior proceedings in the adminis-

tration of such estate which affected the appellants adversely. The appellants were given this right by the entertainment by the court below of their petition and the hearing held on the same to determine whether there was illegality, fraud, or mistake in such settlement or in the prior proceedings. On the issues presented in the court below by appellant as to such claimed illegality, fraud, or mistake in the prior proceedings or in the final settlement, the lower court held and determined that there was no illegality, fraud, or mistake in the prior proceedings or in such final settlement adversely affecting such appellants, and such decision and judgment is amply sustained by the evidence in the record of this appeal.

The law is established in considering such statute that the failure to personally summon the appellants would not entitle them or any of them to have the final settlement or prior proceedings in the estate set aside in the absence of a showing of illegality, fraud, or mistake in the final settlement or in the prior proceedings in the administration of the estate adversely affecting the appellants. §6-1424, Burns' 1933, *supra*; *Manor* v. *Manor* (1944), 222 Ind. 374, 53 N. E. 2d 343; *La Follette* v. *Higgins* (1891), 129 Ind. 412, 28 N. E. 768.

The appellants further contend that it was the executor's duty to investigate whether decedent had an interest in a certain herd of cattle and to bring an action to determine the ownership of such cattle and that the rights of the infant defendants were not fully protected with reference to any interest which the decedent might have had in such personal property. However, from the record it appears that the appellant, Glenn R. Mahin, steadfastly denied that the decedent had any interest in such cattle and that he would resist any effort to inventory them. The

evidence in this record throughout shows that Glenn R. Mahin and Jessie Dayle Mahin, as the guardian of such children, continued to contend that decedent had no interest in such cattle. If the will contest action had been lost and a compromise had not been made, the estate, the appellant, Glenn R. Mahin, and the minor children would all have lost their interest in such estate.

The evidence most favorable to appellees shows that Glenn R. Mahin was of sound mind on December 5, 1952, and until March 16, 1953, when he was committed to jail on a petition for his commitment. The evidence discloses that he left Norways Sanitarium on February 5, 1953, and that his signatures on the checks in regard to the settlement were obtained in the office of Sumner Terry, an attorney, on February 10, 1953, and not at the hospital; and prior to his execution of such checks and upon receipt of the information that he had been in Norways Sanitarium the executor inquired as to his mental condition and advised Mrs. Mahin that unless he was mentally able to carry out the provisions of the contract it would be necessary that a guardian be appointed; and Mrs. Mahin stated to the appellee executor and the attorneys that she was going to Norways to see her husband and if he was not mentally able to sign the checks, she would advise the executor and his attorneys, but if he was mentally able she would obtain his signature. The attorneys, upon learning that he had been confined in the hospital, in the exercise of good faith, immediately demanded assurances that he was of sound mind before they were willing to deal further with him, even though the previous contract about which there was no dispute was executed by Glenn R. Mahin at a time when the undisputed evidence shows that he was of sound mind and

such contract had been partially performed and benefits arising therefrom obtained by the said Glenn R. Mahin. At such times he was not under guardianship nor is there any evidence that he was of unsound mind. There is no presumption that a person dealing with an insane person not under guardianship has knowledge that he is insane. *Judd* v. *Gray, Gdn.* (1901), 156 Ind. 278, 59 N. E. 849.

The appellants assert that Glenn R. Mahin and his wife were unduly and fraudulently influenced to sign the settlement agreement by reason of the reference by counsel to a possible "hung jury" and that certain letters which he had written many years before to a young girl, referred to as the "Rosebud" letters, would be produced in evidence, and that by reason of such improper influences he was induced to sign such settlement agreement. It is clear from the record that a full discussion of the possibilities as to the outcome of the trial was explained by the attorneys to Mahin and his wife in a proper and ethical manner by such attorneys in accordance with the duty which they owed their clients at the time of such trial. Furthermore, the evidence discloses that as far as Glenn Mahin was concerned the possible production of the "Rosebud" letters was of no concern to him and did not influence him in any way, as he said the same already had been known to his wife for some time.

From an examination of the entire record it appears that the trial judge and counsel for the parties herein on both sides of this controversy acted in complete good faith and in accord with the highest standard of ethics and concluded litigation in a compromise settlement with a full regard for all of the parties and the interests of the minor defendants herein, and the appellants have not shown evidence from which it could be concluded that the rights of the minor defendants

360

were not fully inquired into and protected. The case was fairly tried and a just result reached in the court below.

Finding no reversible error the judgment is affirmed.

NOTE.—Reported in 148 N. E. 2d 852.