Pierce *et al. v.* Walton *et al.*

---

## PIERCE ET AL. *v.* WALTON ET AL.

[No. 1,756.   Filed April 27, 1898.]

APPEAL AND ERROR.— *Waiver of Error.*—Errors assigned in this court and not discussed are waived. *pp. 74, 75.*

CONTRACTS.—*Consideration.*—*Moral Obligation.*—The moral obligation of a purchaser of coal to protect the barges of the vendor from ice is a sufficient consideration to support an express promise to protect the barges. *pp. 77-79.*

SAME.— *Consideration.*— Defendant purchased of plaintiff twenty barges of coal.   Plaintiff shipped ten barges thereof and refused to ship the remainder unless defendant would protect the barges from the danger incident to the flow of ice.   Defendant accepted the proposition, and agreed to the terms imposed.   *Held,* that the promise to protect the barges was supported by a sufficient consideration. *pp. 67-80.*

SAME.—*New Promise.*—Where plaintiff refuses to carry out his part of a contract unless certain changes are made therein, and defendant, instead of bringing an action for damages for its breach, agrees to the new terms imposed, and each of the parties act upon it, such agreement is binding upon defendant. *p. 80.*

PRACTICE.—*Motion to Paragraph Complaint.*—Overruling a motion to require plaintiff to state different causes of actions in separate paragraphs of complaint is not available error. *p. 80.*

DEMURRAGE.—*Damages.*—Demurrage is a proper element of damage for the consideration of the jury in an action for injury. to barges. *pp. 82, 83.*

From the Vanderburgh Superior Court.   *Affirmed.*

*J. E. Williamson,* for appellants.

*Garvin & Cunningham,* for appellees.

WILEY, J.—Appellants were coal merchants at Peoria, Illinois, with a branch office at Evansville, Indiana. Appellees were coal miners and merchants at Pittsburgh, Pennsylvania, and sold a large quantity of coal to appellants, to be delivered to them at Evansville. The coal so sold was to be shipped to appellants in barges *via* the Ohio river, and to be delivered at such time or times as the stages of the river would permit.   A tow of ten barges of coal was delivered in June, 1891, which was received and paid for by appellants.   It was contended by appellees that on account of the low water in the river, they were unable to ship the remaining ten barges until December following.   They were shipped then, and appellants paid for them within the time agreed upon.   While the barges were in the possession of appellants for unloading, etc., the river became blocked with ice, and when the ice broke and began to flow, some of the barges were sunk, and others caried away and injured.   It is claimed by appellees that the appellants agreed, in case of danger from ice, that they would, at their own expense, tow the barges, both loaded and empty, to the mouth of Green river, a short distance above Evansville, and keep them harbored there until all danger from ice had passed, when they would tow them back to Evansville and unload them, so appellees could take them back to Pittsburgh.   It is charged that they wholly failed to do this, but suffered them to remain at Evansville during the ice season, whereby they were damaged, two of them sunk and wholly lost.   It is further claimed

that appellants agreed to unload the barges within a reasonable time, so that appellees could get the empties and tow them back for use; but that they kept them for an unreasonable time, and kept appellees out of the use of them, and that by reason thereof they were entitled to demurrage.

It is also further claimed by appellees that after appellants unloaded two of the barges, they used them in their own business, thereby depriving appellees of the use thereof, and that the use of them was worth $5.00 each per day.

Appellees brought their action therefore to recover damages, (1) For injury to their barges, caused by the ice, on account of the alleged negligence of appellants in failing to tow them to Green river; (2) for demurrage, for delay in unloading the barges, and (3) for the reasonable hire of the barges while they were in the alleged use of appellants.

The complaint was in three paragraphs, and is very voluminous. As no question is presented as to the sufficiency of the complaint, it is unnecessary to set it out at any great length. The complaint avers that the negotiations between appellants and appellees, relating to the sale and purchase of the coal, were partly oral and partly by letters and telegrams.

In the amended first paragraph of the complaint, it was alleged that the contract was contained in the correspondence had between them, and then follows all the correspondence relating to the transaction, copied bodily as a part of the complaint. It is enough to say that it clearly appears from this correspondence, that appellants agreed in case of danger from ice while the barges were in their possession, that they would tow the entire fleet to Green river and harbor it there till all danger had passed. It also shows that appellees refused to ship the last tow of ten barges, unless

appellants agreed to protect them from the danger of ice, as above indicated. It is then charged that between the time of the shipment of the first and second fleet of barges, it became apparent to both parties that danger from ice was likely to occur before the barges could be delivered and unloaded; that it was agreed that appellants would take charge of the barges on their arrival at Evansville and use all proper skill in the management thereof; that they would unload the same expeditiously and within a reasonable time; that they agreed to be responsible for any damages resulting to the barges by reason of their neglect, or by reason of their failure to tow them to Green river. It is further averred that said coal was delivered to appellants upon the express conditions and agreements contained in said letters. This paragraph avers that appellees performed all the conditions to be performed by them, but that appellants failed to perform the conditions on their part, in that they did not unload said barges in a reasonable time, whereby appellees were deprived of their use for several months; that appellants took two of the barges and had them towed to distant points to be loaded with coal purchased of other parties; that when said barges were received at Evansville, the appellants placed them in charge of an agent who was grossly careless and ignorant in the management thereof; that for several days prior to January 18, 1892, there were at Evansville eight of appellees' barges in the possession of appellants; that for several days prior to said date, ice had been running in the river, and it became dangerous to leave boats and barges in the river at that point; that the appellants, knowing all the facts, wholly failed and refused to have said barges towed to Green river, or any place of safety; that they caused said barges to be placed along the bank of the river, at a dangerous

point and in a grossly careless and unsafe manner; that by reason thereof, and without any fault or negligence of appellees, six of said barges were, on January, 1892, torn from their moorings by the ice; that two of said barges of the value of $300.00 were sunk and totally lost; that the remaining ones were carried many miles down the river, and greatly damaged; that appellees recovered them at great expense, and expended large sums of money in their repair; that the barges that were not swept away were greatly damaged; that they were deprived of their use for many weeks, to their damage, etc.

In the second paragraph of complaint it is averred, among other things, that in conversation between appellees and one of the appellants representing the appellants at Pittsburgh, Pennsylvania, it was expressly agreed upon receipt of the coal by the appellants, that they would unload it expeditiously and within a reasonable time, and have barges ready to return before there was any danger of ice, and that it was expressly agreed and understood between them, that if the coal was shipped by appellees to appellants, their barges should be fully protected from ice; that such conversation was had on or about April 4, 1891, and that the negotiations that then took place were merely preliminary, and that the contract and sale of delivery of the coal was subsequently completed by letters and telegrams; that early in June, 1891, the appellees shipped a fleet of ten barges, and the last ten barges were not delivered until about December 1, 1891, and that prior to the last shipment, appellants expressly agreed by letter that in case of any danger from ice they would have the whole fleet of barges unloaded and empty, towed to Green river at their own expense, and harbored until danger of ice was passed.

The third paragraph of complaint is, in all material

respects, substantially like the second, and differs from it only in that it sets out at length all correspondence and telegrams between the parties relating to the matters in controversy.

Appellants moved the court in writing to require the appellees to separate their complaint into three paragraphs, which motion was overruled, and appellants excepted. Appellants thereupon filed an answer in seven paragraphs, and a counterclaim in one paragraph. After the filing of these answers and counterclaim, appellees filed an amended first paragraph of complaint, to which appellants filed an answer in one paragraph. The appellees demurred to each paragraph of the affirmative answer, which demurrer was sustained as to the second, third, fourth, fifth, and seventh, and overruled as to the sixth, and appellees' demurrer to the appellants' answer to the amended first paragraph of the complaint was also sustained.

It is unnecessary for us to refer to the issues joined as to appellants' counterclaim, or any of the paragraphs of answer, except as to the second, for all questions arising thereunder are waived by a failure to discuss them.

In the second paragraph of answer, which purports to be an answer to the entire complaint, it is averred that the appellants and appellees entered into negotiations for the sale and delivery of coal mentioned in the complaint; that said negotiations on the part of the appellants were had with the appellant Pierce, at conclusion of which negotiations, he made a memoranda entry in his book as follows: "You are to put the coal along side at Evansville at lots of twenty barges each, at eight cents per bushel, of seventy-six pounds per Louisville gauge, first and second pools screened over one and one-half inch screen. Price

good for any contract, provided we wire you before selling twenty barges; price to be reduced to correspond.    Walton to fill within about two weeks of receipt.    Payment to be made upon receipt of coal in sixty days, without interest."

It is then alleged that said Pierce would return home in about ten days, and determine whether he would enter into a contract for the purchase of coal. On April 15, appellants addressed a letter to appellees in which they said: "Since our Mr. Pierce saw you in Pittsburgh we have decided positively to engage in the gas and coal business *via* Evansville.    We would like to have you send us an analysis of your coal by return mail, and also advise us whether the memoranda of arrangement with you for supply, which is as follows, agrees with your memoranda of the same to wit:" (Then follows the memoranda above set out.)    Then occurs the following: "We think this covers all the points talked of, but if not, we would like to be advised fully of any difference before getting too large a tonnage contracted for."    On the 18th of April, appellees replied to appellants, and said:

"We are just in receipt of your favor of 15th inst., and in reply would state that since your Mr. Pierce was here matters have developed in the mine question that may materially interfere with our ability to furnish said coal, and presume you have noticed in the papers the excitement about the eight-hour question.    We would therefore suggest that you go a little cautious until the matter is determined, for even if the miners do not strike, we could not possibly send you a tow until latter part of May, and, under existing circumstances, we would not agree to furnish more than one tow of twenty barges at eight cents per bushel.    But if you want the tow, and give us the order, we will not go back on our offer, and will send

you twenty barges just as soon as we can. According to your memoranda of the conversation the time mentioned by you is sixty days, which you are to have without interest, provided your credit was satisfactory, which, by the way, we have not yet made inquiry about, but which we shall take the necessary steps to do at once.   Enclosed find analysis of second pool coal." The answer then avers that by the terms of the said letters which constitute the entire contract between appellants and appellees touching the matters in controversy, that appellees agreed to fill the order according to the terms mentioned in the letter of April 15, and that no other different contract was made between them.

The answer then refers to the letters dated November 17, and 19, 1891, written by appellees to appellants, and the answer thereto, quoting from each of them, and it is admitted that the appellants made the promise or agreement contained in the letters referred to, but say said promise was made without any consideration paid, or agreed to be paid.   The answer then contains the following averments:   "Defendants plead the want of consideration as a defense to all that part of plaintiffs' complaint which seeks to recover for the loss of the barges and the repair of those not lost, and all other matters and things growing out of the failure on the part of the defendants to remove said barges to Green river, and any and all things which happened to said barges in consequence of such failure.   As to that part of the plaintiffs' cause of action wherein they seek to recover on the items in the demurrage of their complaint, the defendants say that they never at any time agreed with plaintiffs to pay demurrage, and that by the customs of the port at Evansville, of long standing and immemorial usage, and of universal application, no

demurrage is ever paid for delay in loading and unloading vessels or barges or any other water transports. As to the item in the complaint set out which seeks a recovery for the use by the defendants in and about their business of the two barges, the property of the plaintiffs, the defendants deny they ever in any manner used any of the plaintiffs' barges.

Upon the issues thus joined, the cause was tried by a jury, and a general verdict for appellees, and with the general verdict, the jury answered and returned certain interrogatories submitted to them. Appellants' motion for a new trial was overruled, and judgment was rendered on the verdict.

The errors assigned in this court are as follows: (1) Error of the court in sustaining plaintiffs' demurrer to the second paragraph of defendants' answer; (2) error in overruling defendants' motion requiring plaintiffs to paragraph their complaint; (3) error in sustaining plaintiffs' demurrer to the third paragraph of defendants' answer; (4) error in sustaining plaintiffs' demurrer to the fourth paragraph of defendants' answer; (5) error in sustaining plaintiffs' demurrer to the fifth paragraph of defendants' answer; (6) error in overruling defendants' demurrer to plaintiffs' answer to defendants' counterclaim; (8) error in sustaining plaintiffs' demurrer to the sixth paragraph of answer; (9) error in overruling defendants' demurrer to plaintiffs' answer to defendants' cross-complaint; (10) error in sustaining plaintiffs' demurrer to the second paragraph of defendants' answer to the amended first paragraph of plaintiffs' complaint; (11) error in sustaining the plaintiffs' demurrer to the third paragraph of defendants' answer to the amended first paragraph of plaintiffs' complaint; (12) error in overruling defendants' motion for a new trial.

We will only consider the questions discussed, as all

others are waived.   The first alleged error discussed is the sustaining the demurrer to the second paragraph of appellants' answer.   To determine properly the question thus presented, it is necessary to state as briefly as possible the substantial averments of the answer.   It is the theory of the answer that the contract for the sale and purchase of the coal was consummated by letters and telegrams, and that such letters and telegrams constituted the whole contract. The answer avers that on April 4, 1891, appellants and appellees entered into negotiations for the sale and delivery of the coal mentioned in the complaint; that said negotiations were originally by parol, at an interview between appellees and Wilbur L. Pierce, one of the appellants; that at the conclusion of said interview said Pierce made in writing, in a book, the memoranda above set out.   The answer further alleges that the appellant Pierce, who conducted the negotiations, agreed with the appellees that he would return home, and in about ten days would definitely determine whether he would enter into a contract for the purchase of the coal; that after returning home, namely, on the 15th of April, 1891, he addressed to the appellees a letter, in which it was stated that appellants had decided to engage in the gas coal business, and copied in the letter the memoranda made by Pierce above quoted.   The letter concluded as follows:   "We think this covers all the points talked of, but if not we would like to be advised fully of any difference, etc."   It is then averred that appellees responded to this letter, in which they agreed to ship the coal according to the memoranda referred to, but could not make a shipment before the latter part of May.   To this letter was a postscript, as follows:   "P. S.   According to your memorandum of the conversation, the time mentioned by you is sixty days, which

you were to have without interest, provided your credit was satisfactory, which, by the way, we have not made inquiry about, but which we shall take necessary steps to do at once."

The answer then charges that by the express language of this letter, appellee agreed to fill the order according to the terms of the letter of April 15, from appellants to appellees, and that these letters constituted the entire contract between the parties. It is further averred that on June 17, 1891, appellees delivered to appellants ten barges of coal, and that the remaining ten barges were not delivered until December; that the delay in the last shipment was caused by low water in the river.

In November there was some further correspondence between the parties, in which the possible danger to the barges from ice was discussed, and the appellants thereby agreed that when the second tow of ten barges arrived they would protect them from the danger of ice. On November 17, 1891, appellees wrote a letter to appellants in regard to the shipment of the last ten barges, in which they discussed the danger from ice, and made certain suggestions in regard to protecting the barges in case of ice, and that they should be towed to Green river in case of danger. In that letter appellees, among other things, said:

"We think this is a good proposition, and that you should accept it, as, unless we have some assurance of this character that our barges will be protected, we shall positively decline to send them during the ice season."

To this letter appellants replied on November 19, in which they said: "Regarding manner of handling next ten barges, would say that we had figured on the safety of the new fleet in case of ice, as follows: Our agent is a very careful man, and quick to act in emer-

gencies, so we think as we are not absolutely certain to be troubled with ice, we would let the ten barges come through to Evansville and unload eight of them at the rate of two barges per week, and hold two barges for emergencies. Then in case of any ice (of which we would of course have ample warning) we would have the whole fleet, loads and empties, towed to Green river at our own expense, and then bring down again the loaded barges two at a time when it was safe to do so."

These letters are set out in full in the answer, as well as the original correspondence. While the answer admits the promise or agreement on appellants' part to protect the barges from ice, it is earnestly contended that such agreement was without any consideration whatever, and therefore could not be enforced. It is upon this ground that counsel for appellants contend that the demurrer to the answer should have been overruled.

It will be observed from the pleadings, and the correspondence which enters so largely into them, that appellees were to ship the coal at such time or times as the water in the Ohio river would permit, and that after the shipment of the first tow of ten barges in June, the stage of the water was such that the second shipment could not be made until December. At that time there was both possible and probable danger from ice, which fact was recognized by appellees and appellants. As to this fact there is no controversy. Recognizing this fact, appellees positively declined to ship the second fleet until assured by appellants that every precaution would be taken to protect the barges, and if necessary they would tow them to Green river, etc. Appellants say that they would have ample warning of approaching danger, and the complaint avers that they did have such

warning.   Regardless, however, of such warning, and in violation of their express promise or agreement to protect the barges, they failed and refused to tow them  to Green river, or otherwise protect them, but suffered them to remain in a dangerous and unprotected place, by reason of which some of them were sunk and wholly lost, and others damaged and carried away, etc.

Regardless of the facts charged in the complaint and answer, appellants were under both a legal and moral obligation to use all reasonable means, and to exercise all reasonable diligence and precaution, commensurate to the apparent and known danger, to protect the barges, and if necessary to such protection to have them towed to Green river, which was, as all the facts show, a safe and certain harbor.

The barges were in the possession of the appellants; they had complete control over them, and it was their highest duty to use at least ordinary care and diligence in protecting them from injury.   Conceding, that in the original contract between appellants and appellees, there was no express promise or agreement to tow the barges to Green river in case of ice, etc., the legal and moral duty resting upon them, as above indicated, was a sufficient consideration to support and maintain their express promise and agreement, made and expressed in their letter of November 19, 1891.

In *Willis* v. *Cushman,* 115 Ind. 100, it was held that a moral obligation was a sufficient consideration upon which to base a promise, and that such consideration would support such promise.   In that case the appellee was indebted to appellants upon a promissory note.   He became financially involved, and took the advantage of the bankrupt law.   He was finally discharged in bankruptcy, and after such discharge gave

a new note for the same indebtedness. Such discharge operated as an actual extinguishment of the original debt, and the Supreme Court, by Howk, J., said: "But while this is so, plaintiff's discharge in bankruptcy did not pay his debt to Medsker, but left him morally bound to pay such debt if able to do so at some future time. This moral obligation resting on plaintiff constituted a sufficient consideration for the promissory note he executed to Medsker after his discharge in bankruptcy."

In *Wright, Admr.,* v. *Jones,* 105 Ind. 17, it was held that an equitable consideration was sufficient to uphold a contract.

In Lawson on Contracts, section 103, it is said: "The doing what one is only morally bound to do, as paying a debt barred by the statute of limitations, is a good consideration for a promise."

In such case the statute relieves the promisor from liability, but does not extinguish the debt, and such obligation is a sufficient consideration for a new promise, if such promise be in writing. This rule is of universal application, and is firmly supported by sound reason and honest fair dealing.

Parsons on Contracts, 434, says: "A moral obligation to pay money or to perform a duty is a good consideration for a promise to do so, where there was originally an obligation to pay the money or to do the duty, which was enforceable at law but for the interference of some rule of law." See, also, *Ferguson* v. *Harris,* 39 S. C. 323. In the latter case it was held that a moral obligation to pay money or to perform a duty is a good consideration for a subsequent promise to do so, even if there was originally no legal obligation to perform."

But aside from a moral or equitable duty on the part of appellants, the law imposed upon them a legal

obligation to protect appellees' barges, and such obligations, it seems to us, will support an express promise, and are therefore a sufficient consideration for the agreement made by appellants.

But aside from this there is another principle involved which we think is applicable, and as applied to the facts alleged in the answer, makes it bad. After appellee shipped the first fleet of coal, they absolutely refused to ship the second fleet, unless appellants would agree to protect their barges from the danger incident to the flow of ice. Appellants could have rested upon their original contract, upon this refusal of appellees to perform it, and would have had an action against them for damages for its breach, but instead of that, they accepted the proposition of appellees, agreed to the terms imposed, and each of the parties acted upon it. Under the authorities this was an acceptance of the terms of appellees, and was a sufficient consideration.

The question we are here considering has been decided adversely to appellants' contention, by this court, in *Sargent* v. *Robertson,* 17 Ind. App. 411. In that case, Black J., collected many authorities and gave a clear and exhaustive discussion, showing the application of the principle, and we now content ourselves by referring to it and the authorities there cited. Our conclusion is that there was no error in sustaining the demurrer to the answer.

At the proper time appellants moved the court in writing to require the appellees to paragraph their complaint, so as to state in different paragraphs the different items claimed. This motion was overruled, and such ruling is assigned as error. If each paragraph of complaint, as appellants contend, contains more than one cause of action, the overruling of their motion to separate was not available error. *Wabash,*

*etc., R. W. Co.* v. *Rooker,* 90 Ind. 581.    See, also, *Equitable, etc., Ins. Co.* v. *Stout,* 135 Ind. 444; *Smiley* v. *Deweese,* 1 Ind. App. 211; *Chicago, etc., R. R. Co.* v. *Wolcott,* 141 Ind. 267.    There was no error in overruling this motion.

One reason assigned by appellants in their motion for a new trial was the alleged error of the court in giving and refusing to give certain instructions; and another was the admission and rejection of certain evidence.

A *seriatim* discussion of all the questions thus presented would extend this opinion far beyond any useful purpose.

The record is very voluminous, containing over seven hundred typewritten pages, and we have examined it with very great care.    The instructions given by the court to the jury, as applied to the facts disclosed by the evidence, fairly and fully stated the law.    The appellants tendered, and requested the court to give certain instructions, which were refused, and of such refusal they complain.    We do not think they were thus harmed, for the questions presented in these instructions were substantially covered by other instructions given by the court, except number three, which is as follows:  "If you find that the promise contained in any letter written by the defendants to the plaintiffs, by the terms whereof, defendants agreed to remove plaintiffs' barges to Green river, was made after the contract of sale was fully agreed upon by the parties, and that no consideration was agreed upon by the parties to support such promise so contained in such letter or letters, then and in such case such promise would not bind defendants, for the reason that every contract or agreement to be binding in law must rest upon a consideration.    And any agreement

by either to do or perform any act not embraced in the contract, would not be binding, unless supported by a consideration."

As applied to the facts in this case, the instruction above quoted did not correctly state the law. The question of consideration ordinarily is a mixed question both of fact and of law; but where, as in this case, there is no dispute or conflict as to the facts, the question of consideration becomes one of law alone. The court had instructed the jury that in case they found certain facts to exist, referring to the facts upon which appellants' promise or agreement to protect appellees' barges from the danger incident to the flow of ice in the river, by towing them to Green river, such facts would constitute a sufficient consideration to support such promise and agreement.

Appellants admitted the facts appellees alleged and relied upon, and upon such facts, if the jury found them to exist, it was the duty of the court to declare whether or not such facts constituted a sufficient consideration for the promise, etc. This the court did, and the instruction tendered by appellants upon this point was equivalent to instructing the jury to return a verdict for them.

As we have determined that under the facts pleaded there was a sufficient consideration for the promise, the instruction under consideration was rightfully refused. After a careful consideration of appellants' objections to the admission and rejection of evidence, as presented in their motion for a new trial, we are clear that no available error was committed.

Appellants insist that the verdict is wrong because it includes $1,080.00 damages as demurrage, and under the facts no demurrage was recoverable. In an answer to an interrogatory, the jury fix the amount they find is recoverable as demurrage.

The pleadings and facts fully warrant such finding. Appellees were kept out of the use of their barges for a long and unreasonable time by the acts of appellants, and this was a legitimate element of damages for the jury to consider. Nor can we say, from the evidence, that the amount fixed is excessive.

Taking the whole record, it seems to us that a right conclusion was reached by the trial court, and there is no error for which the judgment should be reversed. Judgment affirmed.