DAUGHERTY ET AL. *v.* DAUGHERTY ET AL.

[No. 17,260. Filed November 24, 1944. Rehearing denied January 4, 1945.]

*Sumner Kenner, Lawrence E. Carlson,* and *Herbert B. Spencer,* all of Huntington, for appellants.

*C. W. H. Bangs* and *U. S. Lesh,* both of Huntington, for appellee.

ROYSE, J.—This is an action brought by appellees (except appellee Exchange Bank of Warren) against appellants to set aside a certain deed to an 80-acre farm and for an accounting of rents and profits.

Hereinafter, when the term appellees is used it shall refer to all appellees except the Bank; the term appellant will be used to refer to appellant Leroy Daugherty.

The amended paragraph of complaint was in four paragraphs, alleging undue influence in the execution of a deed by Thomas B. Daugherty to an 80-acre farm to appellants, and said grantor was at the time of unsound mind, that the deed was not duly executed and that appellees and appellant in fact owned the farm as tenants in common, and that appellees were entitled to partition thereof and for a decree quieting their title, and for an accounting against appellants.

Appellants filed motions to require appellees to make paragraphs two and three of their amended complaint more specific, and also to require appellees to separate and paragraph causes of action. These motions were overruled by the court.

Appellants filed an answer in five paragraphs. The first four paragraphs of appellants' answer were answers under the rules in which they either admitted or denied the several allegations of facts set out in the various rhetorical paragraphs of appellees' com-

plaint and the several paragraphs thereof. In appellants' fifth paragraph of answer they set out a certain contract which they claim was entered into with Thomas B. Daugherty, father of appellant and appellees, and which stated the consideration for the deed, and which contract they claim was fully performed. Appellants also filed a cross-complaint in one paragraph against the appellees herein, in which they claim to be the owners of the farm in controversy and ask that their title to same be quieted as against said appellees.

Appellees filed separate replies to the answer of appellants, and to appellants' cross-complaint.

Appellee Exchange Bank of Warren filed a separate answer in four paragraphs to the several paragraphs of appellees' amended complaint, in which they disclaim any interest in the farm.

Upon proper request the court made a special finding of facts and stated its conclusions of law thereon, as follows:

1. The deed of conveyance executed by Thomas B. Daugherty is invalid and should be held for naught.

2. The mortgage executed by appellants to appellee Exchange Bank of Warren is void and should be cancelled.

3. Appellant and appellees are the owners of the described real estate in fee simple as tenants in common, each owning an undivided one-seventh therein, except that appellees are entitled to a lien on the interest of appellant in the sum of $223.85.

4. Appellees are entitled to have their titles to their respective shares quieted against all claims of appellants.

5. Appellees are entitled to have partition of said lands and the appointment of a commissioner to sell same, etc.

The assignment of errors here is as follows:

(1) The court erred in overruling the motion filed by appellants to require the appellees to make paragraphs two and three of their amended complaint more specific.

(2) The court erred in overruling the motion filed by appellants to require appellees to separate and paragraph causes of action.

(3) The court erred in its conclusion of law numbered one.

(4) The court erred in its conclusion of law numbered two.

(5) The court erred in its conclusion of law numbered three.

(6) The court erred in its conclusion of law numbered four.

(7) The court erred in its conclusion of law numbered five.

(8) The court erred in each of its conclusions of law.

(9) The court erred in overruling the separate motion for a new trial filed by appellants Leroy Daugherty and Thelma Daugherty.

The motion for a new trial contains four specifications, as follows:

(1) That the finding of the court is not sustained by sufficient evidence.

(2) That the finding of the court is contrary to law.

(3) Error in the assessment of the amount of recovery, in this, the amount is too large.

(4) The court erred in admitting and reading in evidence over the separate objection of appellants Leroy Daugherty and Thelma R. Daugherty the following evidence:

An envelope with cancelled U. S. registered postage, and letter from appellees to appellants disaffirming the deed in controversy.

We proceed to a consideration of the questions presented in the order of their presentation.

In their motion to require appellees to make their complaint more specific, appellants ask the trial court to require appellees to set out rhetorical paragraphs 1, 2, 4, 6 and 7 of the first paragraph of complaint which appellees had made part of their second and third paragraphs of complaint by reference.

Section 2-1006, Burns' 1933 authorizes the incorporation in a pleading of parts of a prior paragraph by reference and identification without repetition of the language employed in the first instance. Appellants contend that this provision of the statute has been repealed by Rule 1-3 of the Supreme Court Rules (1943 Revision), the pertinent provision of which is as follows:

> "The party answering or replying to a pleading shall state, without enlargement or elaboration, that he (1) admits, (2) denies, or (3) is without information as to the facts stated in each rhetorical paragraph or each designated part of such paragraph."

We do not agree with appellants' interpretation of this rule, and hold it was not error to overrule the motion to make more specific.

Appellants next contend the trial court erred in overruling their motion to require the appellees to separate and paragraph causes of action. In this motion appellants aver "The fourth paragraph of plaintiffs' amended complaint contains two causes of action, one to quiet title and one in partition." If it was error to overrule this motion, the error was harmless. *Pierce et al.* v. *Walton et al.* (1898), 20 Ind. App. 66, 80, 81, 50 N. E. 309, and authorities there cited.

Assigned errors 3, 5, 6, 7 and 8 require a consideration of the special findings of fact. The trial court made 15 findings of fact, which were substantially as follows:

(1) That Thomas B. Daugherty was the owner of certain described real estate on the 28th day of June, 1941, which had a value of $8000.

(2) Said Daugherty died intestate on October 12, 1942, leaving as his heirs at law the parties hereto, except Exchange Bank of Warren, without having disposed of said real estate other than by the conveyance here questioned.

(3) On June 28, 1941, said Daugherty executed a deed of said lands to appellants, which deed was recorded on October 10, 1941. At the time of the execution of the deed said Thomas Daugherty and appellants executed a contract as stated in appellants' fifth paragraph of answer (which contract is set out in full immediately following these findings).

(4) At the time of the execution of the instruments referred to in Finding No. 3, said Daugherty was over 86 years of age. For many years prior thereto he had suffered from an illness of rheumatic character which incapacitated him from walking without a cane, from cataracts on both eyes which made it difficult for him to read ordinary type, and from the infirmities of old age, from all of which his health in both mind and body was so impaired as to incapacitate him from managing his business affairs.

(5) Because of the infirmities stated in Finding No. 4, appellees brought proceedings in the trial court to obtain a guardian to manage the business affairs of said Thomas B. Daugherty, in which proceedings a trial was had before the court and jury, resulting in a disagreement of the jury. Said action was pending in

said court without further trial at the time of the execution of the deed and contract referred to in Finding No. 3.

(6) Several months prior to March 1, 1940 said Thomas Daugherty was, at his request, brought to the home of appellee Perry Daugherty, at which time appellants were living on the land in controversy, and on the representations of said Thomas Daugherty that appellant was intending to move off of said land and that if he, Perry Daugherty, would take possession and conduct farming operations on terms offered and make a home for said Thomas B. Daugherty, that said Perry Daugherty could remain on said land as long as the father lived. That said Perry Daugherty consented to and did move on said farm in February, 1941, remaining there until November, 1941.

(7) For some time prior to June 28, 1941 appellant made visits to his father Thomas B. Daugherty, and during the period of several weeks prior to said date the visits were almost daily, at which times they would have their visits in a separate room provided for said Thomas Daugherty. No mention was made to appellee Perry Daugherty or to any member of his family of any purpose or plans to make any different arrangements for the ownership or occupancy of said farm, nor did he learn of any desire on the part of said Thomas B. Daugherty that he should vacate said farm in order to enable appellants to return until in August after the execution of said deed, when he was told he was no longer wanted on said farm; that for a stipulated consideration as an inducement for yielding possession in advance of the end of the fiscal farming year, said Perry Daugherty removed from said farm in November, 1941, and appellants returned to said farm and remained there until the present time.

(8)   None of the appellees were present in any of the conferences leading to the execution of the instrument referred to in Finding No. 3, and had no knowledge that such execution was being considered and did not know of such execution until after it was recorded on October 10, 1942, at which time said Thomas B. Daugherty was unconscious in his last illness from which he died two days later; that they had no knowledge of the contract referred to in Finding No. 3 until after this action was begun.   That in August, 1941, appellee Orville Daugherty said to his father Thomas Daugherty that he heard a report he had sold the farm, to which the father replied: "I have sold my farm to Roy under contract.   The heirs need not worry.   If Roy misses a payment it falls back to me and you are going to get your share."

(9)   Appellants did not provide a home for Thomas Daugherty from June 28, 1941, to November 8, 1941, during which time appellee Perry Daugherty provided said home.   Appellants did not pay the taxes on said land for the year 1941 payable in 1942, or the second installment of 1940 taxes payable in November, 1941, as required of them by the contract referred to in Finding No. 3, but said taxes were paid by Thomas Daugherty, nor did they pay for fuel oil and kerosene oil used for heating and lighting their home after taking possession thereof in November, 1941, which items were paid for by Thomas Daugherty.

(10)   Appellants, after the death of Thomas Daugherty, paid the 1942 taxes payable in 1943 in the sum of $69.40, funeral bill $650.00, doctor bill for last illness $8.00, head marker and flowers $8.75, total $736.15. The value of the services of appellant in furnishing a home for Thomas B. Daugherty from November, 1941 to October, 1942 was $240.00,

(11)   From the time appellants took possession of said lands in November, 1941, until the present time, November, 1943, they have been receiving the rents and profits therefrom and made no accounting thereof, appropriating same to their own use, the value of such rentals being $1200.00.

(12)   Refers to mortgage not in dispute.

(13)   On the 8th day of April, 1943, appellees served notice on appellants of their disaffirmance of the deed referred to in Finding No. 3, assigning as reasons for such disaffirmance that said deed was procured through fraud and undue influence and at a time when said grantor was suffering from infirmities of age and was of unsound mind on account thereof.

(14)   At the time of the execution of the deed referred to in Finding No. 3, the grantor was incapable of managing his estate and business affairs on account of the infirmities of age and other ills hereinbefore stated, and was of unsound mind. Because of his helpless condition he had become dependent on others to handle his business affairs. Appellant was then a man of middle age in whom Thomas B. Daugherty reposed confidence, which confidence appellant Leroy, with the acquiescence of appellant Thelma, took advantage of in procuring the execution of said deed at a time and under circumstances which subject it to avoidance.

(15)   The lands involved are not susceptible to division into separate parts according to the interests of the parties in the event appellees are entitled to partition without injury to the whole.

Omitting formal parts, the contract referred to in Finding No. 3 is as follows:

"Whereas, first party is advanced in years and wishes to make arrangements for his maintenance, care and support during the rest of his life and for his proper burial following his death, and whereas

the said Leroy Daugherty is the son of first party and has assisted, comforted and stood by first party and has been a good and faithful son to first party for many years, and the latter desires that his said son and his aforesaid wife shall be and become the owners of the real estate hereinafter mentioned and described.

"Now, therefore, in consideration of second parties' agreements contained herein, and his love and affection for his said son, first party hereby agrees that he will this day convey the following described real estate, towit:

The west half of the northwest quarter of Section 32, Township 26 north, Range 9 East in Huntington County, Indiana containing 80 acres more or less,

to second parties, as their absolute property, by his good and sufficient warranty deed, free and clear of all liens and encumbrances except current taxes.

"In consideration of the conveyance of said real estate to them by first party, second parties hereby jointly and severally agree and bind themselves to provide a home for first party for and during the remainder of his natural lifetime, it being understood and agreed that the providing of a home is meant and intended to include furnishing and supplying first party with necessary, reasonable and proper food, lodging, laundry, medical attention, nursing, care and clothing, and reasonable funds for spending money, and pleasant, comfortable and congenial surroundings, all as a member of second parties' family and in their home, for and during the remainder of first parties' natural life, and also to pay the expenses of first party's last illness and the expenses of his funeral and burial upon his death.

"Second parties shall be entitled to the possession of said real estate on or before March 1, 1942 on the vacation thereof by the tenant now occupying the same, and from that time forward second parties shall live and reside on said real estate and furnish a home for first party thereon and second parties shall commence providing first party with

a home as aforesaid on the delivery of the possession of said real estate to second parties; provided, however, that at the option of first party and prior to and pending the delivery of the possession of said real estate second parties shall provide a home for first party in the manner aforesaid at the present home of second parties.

"It is further expressly agreed that, for and during the lifetime of first party, if the annual expenditures required of the second parties in connection with the providing of a home for first party as provided herein shall cost or amount to less than two-fifths of the proceeds received by second parties from crops raised and harvested by them on said real estate during any such period then the difference shall be turned over and paid to first party by second parties as first party's own funds. If such annual expenditures require or cost an amount exceeding two-fifths of such proceeds second parties shall nevertheless be required to fully comply with the terms and provisions of this agreement.

"Second parties further agree that they will pay all taxes and assessments against said real estate promptly and on or before maturity; and second parties further agree that they will not sell, mortgage or encumber said real estate or any part thereof during the lifetime of first party without the express written consent of first party.

"It is expressly understood and agreed that in the event of any failure or default by second parties in the performance of any promise or agreement on their part contained herein, then and in such event said real estate shall revert to first party upon his written demand therefor and second parties shall thereupon reconvey said real estate to first party, and in any such event first party shall thereupon again be and become the sole and absolute owner of said real estate and second parties shall be entitled to no compensation or reimbursement for any expenditures which they may have made or any services which they may have performed or any matter or thing whatsoever done by them in carrying out or complying with the

terms and provisions of this agreement prior to any such reversion."

Appellants contend the statement in Finding No. 14 that the grantor "was of unsound mind" at the time of the execution of the deed is not the statement of a fact but is a conclusion of law and must be disregarded. A like contention is made as to the statement in Findings Nos. 4 and 14 that the grantor "was incapable of managing his estate and business affairs."

It is well established that, "Ordinarily, it is the ultimate facts and not the evidentiary facts that should be stated in a special finding. But notwithstanding the well-settled rule that ultimate facts only should be found and that mere evidentiary facts will be disregarded the courts have held that where the primary facts found lead to but one conclusion, or where the facts found are of such a character that they necessitate the inference of the ultimate facts, such ultimate facts will be inferred and treated as found." 2, Watson's Works Practice, p. 235, § 1593.

The question we are called upon to determine is: Does the special finding of facts show that the grantor, Thomas Daugherty, was at the time of the execution of the deed here involved, of such unsound mind that the deed in question is voidable? It is settled that not all weakness of mind, imbecility or insanity will subject the contract of a person not previously adjudged insane to avoidance. In 32 C. J. 727, § 496, it is stated: "The test of mental capacity to contract is whether the person possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged; and in order to avoid a contract it must appear not only that the party was of unsound mind or insane when it was made, *but that this unsoundness or insanity was of*

*such a character that he had no reasonable perception or understanding of the nature and terms of the contract."* (Our emphasis.) See also, *Teegarden et ux* v. *Lewis, Administrator* (1895), 145 Ind. 98, 101, 40 N. E. 1047, 44 N. E. 9; *Deckard* v. *Kleindorfer et ux* (1940), 108 Ind. App. 485, 29 N. E. (2d) 997.

Applying this rule to the special findings herein, it is apparent that it was not found, nor do the primary facts found lead to the one conclusion that the grantor was of such unsound mind he was unable to comprehend in a reasonable manner the act in which he was engaged. This was the ultimate fact necessary for the court to find if the deed and contract are to be avoided because the grantor was of unsound mind. *Teegarden et ux* v. *Lewis, Administrator, supra; Wiley et al.* v. *Gordon et al.* (1914), 181 Ind. 252, 264, 104 N. E. 500. Old age and the infirmities incident thereto do not render a person incapable of making a valid contract. It is only when such infirmities impair the mental faculties to the extent that one does not have a reasonable understanding of the nature and terms of the contract that it may be avoided. The special findings do not show that this condition existed.

But appellees assert that if it be conceded these statements are conclusions of law rather than findings of fact, the statement in Finding No. 14, with other supporting facts, that "The defendant Leroy Daugherty . . . was a man in whom Thomas B. Daugherty reposed confidence, which confidence Leroy Daugherty, with the knowledge and acquiescence of Thelma R. Daugherty, took advantage of in procuring the execution of said deed, at a time and under circumstances which subjects it to avoidance," is sufficient to sustain the first conclusion of law.

Where the facts found in the special findings lead

to but one conclusion or result, such deduction will be made as a conclusion of law. *The Crawfordsville Trust Company, Executor, et al.* v. *Ramsey* (1913), 55 Ind. App. 40, 73, 74, 100 N. E. 1049, 102 N. E. 282.

The courts and legal text writers have experienced great difficulty in defining what constitutes such undue influence as will subject a contract to avoidance. In 17 C.J.S., 538, § 180, it is defined generally as follows:

"While 'undue influence' is difficult of precise definition, it may be broadly defined as unlawful control exercised by one person over another so as to substitute his will for the volition of the victim."

In 12 Am. Jur. 640, 641, §148, it is stated:

"Assent obtained through undue influence may invalidate a contract. What constitutes undue influence is a question depending upon the circumstances of each particular case. It is a species of constructive fraud which the courts will not undertake to define, by any fixed principles, lest the very definition itself should furnish a finger board pointing out the path by which it may be evaded. Equity may relieve against a transaction on the ground of undue influence where it is the result of a moral, social, or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, even though there is no coercion amounting to duress and invalidity at law. Whenever the relationships between the parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that unfair advantage in a transaction is rendered probable either because of superior knowledge of the matter derived from a fiduciary relationship or from overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side, the presumption is that the transaction is invalid, and it is incumbent on the stronger party to show affirmatively that no decep-

tion was practiced or undue influence used and that everything was fair, open, voluntary, and well understood."

With these rules in mind we are of the opinion that the special findings of the trial court are sufficient to sustain its first conclusion of law. Furthermore, the findings show appellants did not comply with the terms of their contract.

As pointed out by appellees, the main issue in this case is the validity of the deed in question. Therefore, in view of the conclusion we have reached, we do not deem it necessary to consider appellants' 5th, 6th, 7th and 8th assignments of error.

The ninth assignment of error is that the trial court erred in overruling appellants' motion for a new trial. The first specification of this motion is that the findings of the court are not sustained by sufficient evidence. This requires a consideration of the evidence most favorable to appellees.

The record discloses that at the time of the transactions here involved the decedent, Thomas B. Daugherty, was a man past 86 years of age. He had for several years prior thereto suffered from rheumatism and walked with a cane. His eyesight was impaired. He was able to see to write his name and to move about. In the year 1937 appellees, after a consultation among themselves, which appellants did not attend, brought an action to have a guardian appointed for their father, the decedent. Prior to the filing of this action appellees sought to obtain decedent's consent to the appointment of a guardian, which he refused to do. The guardianship action was tried in the Huntington Circuit Court. After a trial lasting four days the jury trying the cause disagreed. It was never retried and was pending at the time of decedent's death. At the

trial of the case here involved all of the appellees and the wife of appellee Perry Daugherty testified that in their opinion the decedent was of unsound mind at the time the deed here questioned was executed. They stated, in substance, that this belief was based upon the fact that the decedent resented their having brought the guardianship action; that he cried when he talked about that action, and because he was suffering from rheumatism. Most of these appellees had only seen their father on one or two occasions between the time of the trial in 1937 and the execution of the deed and contract herein in 1941. There were also several other witnesses who testified that in their opinion the decedent was of unsound mind. An insurance agent testified he believed the decedent was of unsound mind because he had told the agent to fix his insurance policies in the manner the agent believed would be for the decedent's best interests. Others so testifying based their belief on similarly unsubstantial grounds. There was no medical testimony on this subject.

It is further disclosed by the evidence that after the trial in the guardianship case decedent lived with the appellants until about February, 1940. At about this time appellants took another farm and the decedent made arrangements with appellee Perry A. Daugherty and his wife, Sarah Jane Daugherty, to take over the farm in controversy on a share basis. This agreement was reached after several conferences in reference to the terms of the tenancy. The arrangement did not prove satisfactory to decedent. He on several occasions complained to his friends that Perry could not make a go of the farm and that he was afraid he would lose it if he didn't make a change. In late May or early June, 1941 decedent requested a neighbor to go and

see appellant and tell him that the decedent wanted to see him about making a change in the arrangements for the farm. In response to this request appellant visited his father who proposed the appellants come back and take care of him so long as he lived and promised that he would see to it that appellants would get the farm. After several conversations on this subject the decedent took the matter up with the lawyer who had represented him in the guardianship action and in other matters. The lawyer drew up the contract and deed here involved. Subsequently in August, 1941, the decedent told appellee Perry Daugherty he wanted him to remove from the place so that Leroy could return. Said appellee refused to do this unless decedent would pay him the sum of $150 and agree to combine the corn and beans. A written contract was drawn up between decedent and said appellee to this effect and he received the $150 from decedent and moved from the farm in Novmber, 1941. It is significant to us that the wife of appellee Perry Daugherty testified that on this occasion she believed decedent "knew exactly what he was doing." Appellants thereupon moved on the farm, paid the taxes and otherwise performed other obligations under the contract.

The evidence is uncontradicted that decedent personally and at all times took care of his banking business, participated in A.A.A programs relative to crop rotation, signing papers in relation thereto, and discussing same with the agent of the A.A.A. and his neighbors. He took care of and handled the rental of property he owned, consulted his lawyer on numerous occasions about his business affairs, discussed with him his property holdings and how he desired to dispose of them when he died.

The opinion of non-expert witnesses that a person is

of unsound mind can have no greater weight than the facts upon which such opinion is based. *Potter et al.* v. *Emery et al.* (1940), 107 Ind. App. 628, 26 N. E. (2d) 554; *Rarick et al.* v. *Ulmer, by next Friend* (1895), 144 Ind. 25, 42 N. E. 1099.

We do not believe the opinions of the witnesses who testified the decedent was of unsound mind are based on facts sufficient to show his mind was so impaired that he did not have a reasonable understanding of the transaction here involved.

In the last cited case the Supreme Court, at page 32, said:

"Assuming without deciding that such opinions standing alone are sufficient to support the verdict, yet as they do not assume or pretend to furnish any measure or to define the degree of the testator's supposed mental infirmity, and as other parts of appellee's evidence show that testator had mind enough to know the extent and value of all his property, the names of all his children and those that might or ought to be the natural objects of his bounty and was able to hold all these in his mind long enough to dictate and have his will prepared, testamentary capacity is shown by appellee and therefore there is a total failure of evidence to establish testamentary incapacity."

In the case here considered there is uncontradicted evidence that he not only knew and understood the consequences of his act in the premises, but that he sought the aid of a lawyer of his own choosing to see that his rights would be protected and caused a contract to be drawn which fully protected those rights. Nor does the evidence in this case indicate that the mind and will of decedent were overcome to the extent that his act in deeding this property was not in fact done of his own free will. Therefore, we hold there was not sufficient evidence to sustain the

finding of the trial court that the deed was executed under such circumstances as subject it to avoidance.

We do not believe the trial court erred in admitting in evidence appellees' Exhibit 4, which was a ▉ letter notifying appellants of appellees' disaffirmance of the deed.

We do not deem it necessary to pass on the other errors assigned.

The judgment of the Huntington Circuit Court is reversed with instructions to sustain appellants' motion for a new trial.

Note.—Reported in 57 N. E. (2d) 599.