**Porter B. WILLIAMSON, Plaintiff-Appellant,**

v.

**BENDIX CORPORATION, Defendant-Appellee.**

**No. 13148.**

United States Court of Appeals Seventh Circuit.

April 27, 1961.

James E. Keating, South Bend, Ind., for appellant.

Nathan Levy, George N. Beamer, South Bend, Ind., for appellee.

Before KNOCH and CASTLE, Circuit Judges, and MERCER, District Judge.

KNOCH, Circuit Judge.

In his complaint for $150,000 in damages, plaintiff alleges that he and The Bendix Corporation, hereinafter sometimes called "Bendix," entered into a contract on or about May 28, 1951, whereby Bendix would employ plaintiff at $400 per month, the employment "to be permanent."

The contract was evidenced by a writing, plaintiff's exhibits 2 and 2A, which consist of an original and carbon copy of handwritten entries on Bendix's printed Employment Requisition forms, dated April 5, 1951, one section of which reads as follows:

☐ Temporary
☒ Permanent
☐ Replacement

The form states that plaintiff is to be employed as "Staff Assistant" and that his salary rate is "subject to increase at end of six months."

Plaintiff further alleges that he had been employed by Bendix until August 15, 1954; that although he requested "permanent employment pursuant to the aforementioned agreement," defendant refused to employ him.

Defendant answered denying that the employment, which began on or about May 28, 1951, was to be "permanent" unless "permanent" was construed to mean "terminable at will," and asserting, *inter alia*, that plaintiff had, on May 21, 1951, signed an "Employee's Patent Agreement" in which he acknowledged that his employment was on a month to month, or day to day, basis; and, further, that plaintiff had, in writing, released defendant from all claims to employ him.

Plaintiff asserted in his reply that he executed the release "under duress, coercion and undue influence." Plaintiff uses all three terms ("duress," "coercion" and "undue influence") generally together. He complains that the District Judge failed to consider all three, and that the District Judge disposed of the matter of duress only. Study of plaintiff's deposition in the Court below and of the briefs filed in the District Court and in this Court, however, indicates that plaintiff uses these three terms as though they were legal synonyms, all meaning "duress." The same conduct is described as constituting the duress, coercion and undue influence of which complaint is made. In his brief filed below, Bendix's counsel stated that the term "duress" would be used to cover all three terms in his brief and argument. It appears that the District Court adopted the same procedure in his opinion.

The District Court granted Bendix's motion for summary judgment, and dismissed this action. Plaintiff appealed.

In his deposition, plaintiff stated that he was a practicing attorney admitted to the Bar of Indiana in 1939, that he was employed to work initially on the temporary Controlled Materials Program at Bendix, with the understanding that he would be transferred to work of a permanent nature.

On July 15, 1951, Bendix requested a security clearance for plaintiff from the U. S. Navy in order to qualify him for work which required such clearance. On December 3, 1953, the Navy tentatively denied that clearance on the stated ground that:

"[Y]our past behavior, activities and associations tend to show you are not reliable."

On December 30, 1953, Bendix notified plaintiff that he was discharged effective January 15, 1954. Plaintiff believed that termination of his employment would terminate the proceedings on his security clearance, and that his reputation would be seriously damaged by suspension of the proceedings at the point of tentative denial. He, therefore, requested a leave of absence in place of discharge. In response to that request, George E. Stoll, an officer of Bendix, wrote plaintiff the following letter, which was delivered to him at the Bendix plant on the same day or the day following:

January 12, 1954

"Mr. Porter B. Williamson

"Leave of Absence

"If you desire a leave of absence for a period of three months beginning January 15th, 1954, on the conditions set out below, such a leave will be granted you upon receipt of a signed copy of this memo, provided you sign and return it on or before January 15th, 1954.

"Such leave of absence will, of course, be without pay. It is understood that the corporation is not obligated, and does not by granting this leave assume any obligation, to provide you with employment at any time during or after the expiration of the leave.

"If you are not assigned to a job upon the expiration of your leave, your term of employment will automatically terminate at that time, without further notice and without any right to further compensation.

"The Résumé of Facts Pertaining to Employment appended to your request for leave of absence makes numerous references to a "permanent position" which you seem to feel was promised to you at the time you were employed. It seems highly unlikely that either Mr. Lyman or Mr. Campbell would indicate to you that

anything in the nature of a guarantee of continued employment was to be expected, as both of these men are fully aware that their own employment is on a month to month basis, and that no one in a position subordinate to their own could possibly be given a more favorable employment contract. This is a corporation policy which is well established and well understood.

"Your memo also contains numerous inferences that you feel that you may be entitled to some adjustment of your salary for a portion of the time you have been employed. It must be clearly understood that the salary at which you have been and are being paid is your total salary, and that it is not subject to any retroactive adjustment.

"It is my personal feeling that the corporation has been exceedingly fair to you in continuing your employment for as long as it has under the circumstances which have existed for the past six months. This has been done in the hope that some assignment could be found for you in which your recognized capabilities could be utilized. As you know, however, such an assignment has thus far failed to materialize.

"Out of a consideration for your desire to further prosecute your security clearance application and because of our own desire to avoid any action on our part which might make your ultimate success in that direction any less likely, we are willing to consider favorably your request for a leave of absence on the basis outlined above. If this is consistent with your desire in this matter, please sign and return the enclosed copy of this memo, thereby indicating your acceptance of the conditions under which the leave of absence is offered. If a signed copy of this memo is not received by five p.m. on January 15th, 1954, no favorable action will be taken on your request for leave and your employment with this corporation will, pursuant to previous notices, be considered to have terminated on that date.

> "George E. Stoll

"Enclosure"

to which plaintiff added:

> "Accepted:
> "Porter B. Williamson
> "Date          January 13, 1954"

Plaintiff stated that he discussed this document by telephone and in person with Bendix's counsel, Ritchie Whitesell, who cautioned him that:

> "You understand when you sign this that you are giving us a complete release of any financial responsibility."

to which plaintiff had replied that he was willing to do that.

Plaintiff continued to assert, in the face of repeated contradiction by various Bendix officials and employees, that his employment was permanent, but he, nevertheless, executed the release because, he says, he felt that he had no other choice if he wished to avoid the stigma of security clearance denial.

On April 5, 1954, plaintiff wrote from his home asking Mr. Stoll for an extension of the leave of absence to July 15, 1954:

> "[F]or the purpose of terminating the problem of security clearance from the United States Navy."

Such extension was granted subject to the:

> "[C]onditions set out in the memo of January 12th, which were applicable to your original leave of absence,
> *     *     *"

A further extension to August 14, 1954, was granted on a written request made by plaintiff:

> "[F]or the same purpose, and if granted, will be accepted in accordance with the same terms of the leave granted Jan. 15, 1954."

On July 14, 1954, plaintiff's security clearance was granted. Plaintiff asked

Bendix for employment, which was refused.

Plaintiff contends that he had to sign the release lest he lose all opportunity of defending his reputation; that Mr. Stoll knew he had no other recourse, took undue advantage of the situation, and thus exercised unlawful control over him, substituting Mr. Stoll's will for that of plaintiff, in threatening to breach the permanent employment contract by discharging plaintiff.

Plaintiff states the contested issues to be:

"1. Whether the defendant used undue influence in obtaining the plaintiff's acceptance of the memorandum dated January 12, 1954.

"2. Whether the plaintiff's acceptance of Stoll's memorandum of January 12, 1954 was obtained by duress."

We agree with the District Judge, that there was no genuine issue of fact presented with respect to the contention that duress, coercion, and undue influence induced the release.

■ On plaintiff's own evidence the conduct constituting the alleged duress, coercion and undue influence, was the wrongful threat to breach an employment contract in order to obtain a release of a claim made under that contract. The District Judge held that such a threat did not conform to the Indiana definition of duress: an actual or threatened violence or restraint of a man's person, contrary to law, to compel him to enter into a contract or discharge one, citing Tucker v. State ex rel. Hart, 1880, 72 Ind. 242 and Board of School Com'rs of City of Indianapolis v. State ex rel. Bever, 1936, 211 Ind. 257, 5 N.E.2d 307, 6 N.E.2d 702.

■ Plaintiff, himself a lawyer, clearly understood the terms of the release which he signed. He testified further that, as indicated, Mr. Whitesell had fully explained the effect of the release before plaintiff signed it. At worst, defendant is charged with taking advantage of a situation which it did not create.

We have carefully examined the cases on which plaintiff relies to show the existence here of undue influence or duress. All of them are clearly distinguished from the situation now before us.

In Daugherty v. Daugherty, 1944, 115 Ind.App. 253, 57 N.E.2d 599, it was sought to set aside a conveyance made by a grantor past 86 years of age, who suffered from rheumatism, walked with a cane, and whose sight was impaired. At the time of the conveyance, proceedings were pending to obtain a guardian to manage his business affairs. One trial had resulted in a disagreement by the jury. No second trial had been set. It was further asserted that defendant was a man in whom the grantor had reposed confidence, and who had taken advantage of the grantor in procuring execution of the deed at a time and under circumstances which subjected it to avoidance. The trial court in Daugherty found the conveyance to be void. On appeal that finding was reversed on the ground that the facts did not show the grantor's mind to be so impaired that he did not have a reasonable understanding of the transaction involved.

In McCowen, Probst, Menaugh Co. v. Short, 1918, 69 Ind.App. 466, 118 N.E. 538, 119 N.E. 216 the complaint alleged that Oscar F. Short had been permanently incapacitated through the negligence of his employer, and that while in a weakened condition of mind and body, unfit to transact business, he had been induced to settle his claim by such devices as withholding material information from him, falsely stating the extent of his injuries to be minor, and threatening to blacklist him. The Court found that the complaint made out a case where parties having a superior position of power and influence abused the confidence reposed in them to gain an advantage not obtainable without such abuse.

Noyer et al. v. Ecker et al., 1954, 125 Ind.App. 63, 119 N.E.2d 902 involved a will allegedly executed under duress and coercion when the testatrix was of unsound mind. The Appellate Court found no evidence at all to indicate that testa-

trix did not have sufficient mental capacity to make her will nor that the will was not her own voluntary act and deed.

Curtis v. Corya, 1946, 117 Ind.App. 244, 69 N.E.2d 742 concerned a 75-year-old woman who conveyed her farm without consideration while wholly incapable of transacting any business. The coercion and undue influence alleged in that case consisted of extreme physical violence.

Ford Motor Co. v. United States, 1948, 335 U.S. 303, 69 S.Ct. 93, 93 L.Ed. 24 and United States v. General Motors Corporation, 7 Cir., 1941, 121 F.2d 376, involved anti-trust matters wherein automobile manufacturers were charged with influencing their dealers to give their business in financing automobile purchases and sales to specified finance companies in which the manufacturers had an interest. The Court distinguished such practices as cancellation or refusal to renew a contract or discrimination in shipment of automobiles, as "coercion" and not "persuasion."

In Holzman v. Barrett, 7 Cir., 1951, 192 F.2d 113, there was a disputed issue of fact as to whether the original duress remained in effect at the time of the execution of the agreements on which the defendants there relied. In the case before us, Bendix admits, for the purpose of the motion for summary judgment, the factual allegations of the plaintiff, but disputes the legal effect attributed to them by the plaintiff.

Plaintiff's reliance on the W. R. Grimshaw Co. v. Nevil C. Withrow Co., 8 Cir., 1957, 248 F.2d 896, 904 is misplaced. The Court there said:

"An examination of the cases in the field of duress and economic coercion makes it clear that three elements are common to all situations where actionable duress has been determined to exist: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. [citing cases]

"In order to substantiate the allegation of economic duress or business compulsion, the plaintiff must go beyond the mere showing of a reluctance to accept and of financial embarrassment. There must be a showing of acts on the part of the defendant which produced these two factors. The assertion of duress must be proven by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities." At page 904.

In Brooks v. Berryhill, 1863, 20 Ind. 97, it was held that Mrs. Berryhill signed a mortgage solely to obtain release of her husband who was held in illegal custody. Modlin v. The Northwestern Turnpike Co., 1874, 48 Ind. 492 involved a note given to prevent levy and sale of land on an illegal assessment. In Line v. Blizzard et ux., 1880, 70 Ind. 23, a wife executed a mortgage because of her husband's threats to abandon her and her children. On a suit to foreclose that mortgage the wife answered pleading duress. There was no allegation that the mortgagee was aware of the husband's threats. The Court held that the answer was insufficient and that demurrer thereto should have been sustained.

In Furman v. Gulf Ins. Co of Dallas et al., 8 Cir., 1946, 152 F.2d 891, 893, Mr. Furman was induced to transfer his insurance agency without consideration on the threat that otherwise the insurance companies would not give him a "clean bill of health." This meant that they would cancel his policies, attempt to rewrite them directly, with implied notice to the policy holders that failure to pay the premiums had caused the cancellations.

Defendant here is not responsible for the pressures under which plaintiff acted in releasing a claim which he deemed valid.

All other points and authorities raised by plaintiff have been considered without altering our determination that the District Court's judgment must be affirmed.