NEAL, P. J., and ROBERTSON, J., concur.

**Robert O'DELL, Defendant-Appellant,**

**v.**

**Helen YOUNGBLOOD and Robert McGill, Under a Power of Attorney for Hazel McGill, and as Administrator CTA of the Estate of Trenton Triplett, Plaintiffs-Appellees.**

**No. 1–1280A337.**

Court of Appeals of Indiana, First District.

June 29, 1981.

Arthur A. Jones, Paris, Ill., for defendant-appellant.

Phillip V. Price, Boyle, Atlas, Hyatt & Reuben, Indianapolis, Fritz D. Modesitt, Brazil, for plaintiffs-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Robert O'Dell appeals from a judgment setting aside two deeds executed in his favor by Trenton Triplett, now deceased, and for the value of the rents and profits from the real estate from the date of decedent's death, of funds from several bank accounts in the joint names of Triplett and O'Dell, and of a 1976 Buick purchased by Triplett. We affirm.

## FACTS

Triplett was eighty-nine years of age at the time of his death on May 30, 1976, in Union Hospital, Terre Haute, Indiana. Triplett's wife had died in 1955. Although Triplett had no children of his own, his wife's children of a former marriage, Helen Youngblood and Hazel McGill, who were in their seventies at the time of this action, were the sole beneficiaries named in Triplett's will executed in 1967. On March 22, 1976, Triplett executed a second will leaving his entire estate to Youngblood, McGill, and a second cousin, Carrie Kempf, to share equally. For several years prior to his death, Triplett had become close friends with O'Dell. Neither man being married, they passed the time together fishing and playing cards. O'Dell began to look after Triplett and near the end of Triplett's life cared for Triplett in his own home during intervals between Triplett's visits to the hospital in February, March, and April of 1976. In late April 1976 Triplett purchased a 1976 Buick Regal, titled it in his own name, and executed two deeds conveying his real estate to O'Dell. By early May 1976 Triplett's checking and savings accounts were converted to joint accounts in both his name and O'Dell's. After Triplett's death this action was brought by Hazel Youngblood and Robert McGill, under power of attorney for Hazel McGill and as Administrator CTA of the estate of Trenton Triplett, to set aside the deeds and for an accounting of the rents and profits from the lands as well as the value of funds in the bank accounts and of certain personal

property. The court in an exemplary entry made detailed findings of fact, conclusions of law, and judgment in favor of Young-blood and McGill.

## ISSUE

Whether or not the court's conclusions were contrary to law because they were unsupported by the evidence.

## DISCUSSION AND DECISION

O'Dell contends that the trial court erred in entering judgment against him because there was "no testimony or evidence of any direct undue influence" by O'Dell and that there was evidence of Triplett's "alertness, good memory, and realization of the consequences of his actions" both at the time he demanded preparation of the deeds and at the time of execution of the deeds.

■ We perceive O'Dell's argument as an invitation to this court to reweigh the evidence presented in the court below. O'Dell must be aware, certainly, that such a task is one we may not perform. In order to set aside a contract or deed because of undue influence, it is not necessary that there be presented direct testimony that a witness saw or perceived the grantee directly exercising undue influence over the grantor. As explained by Judge Shields:

> "Whether undue influence was exercised must usually be inferred from the facts and circumstances of the particular case, such as the situation of the grantor and her relation to others, her condition of health and its effect on body and mind, her dependence upon, and subjection to, the persons claimed to have influenced her, and their opportunity to wield such influence."

*Moore v. Harvey*, (1980) Ind.App., 406 N.E.2d 354, 359. *See also, Hunter v. Milhous*, (1973) 159 Ind.App. 105, 305 N.E.2d 448. Thus, whether undue influence was exercised or not is a question for the trier of fact. *Moore v. Harvey, supra.*

■ Likewise, what facts are necessary to show undue influence depends upon the circumstances of each individual case.

*Daugherty v. Daugherty*, (1944) 115 Ind. App. 253, 57 N.E.2d 599. Although courts are reluctant to define undue influence in terms of fixed principles " 'lest the very definition itself should furnish a finger board pointing out the path by which it may be evaded,'" *Id.* at 57 N.E.2d 605 citing 12 Am.Jur. § 148, 640, 641, this court has outlined those elements necessary to constitute undue influence. As expressed by Judge Sullivan, "[u]ndue influence is the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." *Hunter v. Milhous, supra,* at 305 N.E.2d 459. The fact that O'Dell was not physically present when Triplett executed the deeds conveying two tracts of land to him is not determinative on the issue of whether or not O'Dell exercised undue influence upon Triplett so that he was constrained to do that which he otherwise would not have done. It was only one fact in the entire set of circumstances which the trier of fact must consider in determining the ultimate issue.

■ Likewise, the fact that there was evidence of Triplett's alertness, good memory, and seeming realization of the consequences of his actions at the time of the execution of the deeds is not conclusive on the issue of his mental capacity. It is not necessary to support a finding of undue influence with evidence of complete unsoundness of mind. "Weakness of mind when combined with other factors is sufficient. *Yount v. Yount* (1895) 144 Ind. 133, at 138–139, 43 N.E. 136." *Id.* at 305 N.E.2d 460. Therefore, Triplett's physician's testimony that he was treating Triplett at the time of the conveyances for congestive heart failure, chronic obstructive pulmonary disease, emphysema, artercsclerotic heart disease, chronic duodenal ulcer, and a urinary tract infection, as well as chronic brain syndrome associated with senility and cerebral artercsclerosis and central nervous system syphilis from which possible brain damage may result is certainly sufficient

evidence to support a finding of diminished mental capacity so as to be susceptible to the possibility of undue influence by one in O'Dell's position. Once again, we shall not reweigh the evidence or judge the credibility of the witnesses who presented evidence on Triplett's soundness of mind.

Because the facts and circumstances in the record are sufficient to support the trial court's conclusion that the conveyances by Triplett to O'Dell were brought about as a result of undue influence, we must affirm the trial court's judgment.

Judgment affirmed.

ROBERTSON, J., and BUCHANAN, C. J. (by designation), concur.